IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE

RICHARD DOZIER and )
GAIL DOZIER )
                     )
                     )
    Plaintiffs, )
                     )              **JURY DEMAND**
v. )
                     )              Case No. 2013-CV-685
STANDARD FIRE )
INSURANCE COMPANY, )
                     )              **FILED**
    Defendant. )
                     )   **A.M.** DEC 16 2013 **P.M.**

                                         LINDA NEAL, CIRCUIT COURT CLERK
              **COMPLAINT**                          WILSON COUNTY, TN

     Plaintiffs, RICHARD DOZIER and GAIL DOZIER, for their Complaint against the

Defendant, STANDARD INSURANCE COMPANY, ("Defendant" or "STANDARD"), would

respectfully show and allege to the Court as follows:

### GENERAL ALLEGATIONS

     1.    Plaintiffs, RICHARD DOZIER and GAIL DOZIER, own the property located at

563 Glen Echo Drive, Old Hickory, Tennessee 37138.

     2.    Defendant, STANDARD FIRE INSURANCE COMPANY, is a for-profit foreign

insurance company authorized to engage in, and does engage in, the sale and delivery of property

insurance within the State of Tennessee. The registered agent for service of process of

STANDARD FIRE INSURANCE COMPANY is the Tennessee Department of Commerce and

Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

EXHIBIT
A

3.     Plaintiffs' claim for relief arises from a covered sinkhole loss to their property located at 563 Glen Echo Drive, Old Hickory, Tennessee 37138 ("Property"). Venue is proper pursuant to Tenn. Code. Ann. § 20-4-103.

4.     At all times material hereto, Plaintiffs have been the owners of the Property.

5.     Plaintiffs renewed or procured a policy of homeowner's insurance, policy number 038479682 633 9 ("Policy"), from Defendant covering the above-referenced property from May 31, 2012 through May 31, 2013. A copy of the certified Policy is attached hereto as Exhibit 1.

6.     In consideration of monies paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' property against risks, including sinkholes. The insurance policy provided dwelling insurance coverage in the amount of $249,000.00, in addition to other coverages.

7.     Plaintiffs have renewed the Policy each and every year and has paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.     On or about January 6, 2013, while the Policy was in full force and effect, the Property was damaged as a result of sinkhole activity.

9.     The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10.    A notice of loss and damages was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11.    Defendant sent a professional engineer, Rimkus Consulting Group, Inc. ("Rimkus"), to Plaintiffs' Property who confirmed that there was damage to the home, but stated that was caused by perils excluded under the policy and not by sinkhole activity.

12.    On April 2, 2013, Defendant sent a letter to Plaintiffs stating that Rimkus determined that sinkhole activity was not a cause of loss and denied the claim.

2

13. On or about September 20, 2013, Plaintiffs, through counsel, sent a request that the full amount be paid or that Plaintiffs would seek a bad faith penalty for the handling of his claim.

14. On or about October 3, 2013, Defendant sent correspondence confirming its denial of Plaintiffs' claim.

15. Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained.

16. Plaintiffs have been required to retain the services of the undersigned counsel and are obligated to pay them reasonable fee for their services.

## BREACH OF CONTRACT

17. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 16 above as though fully set forth herein.

18. Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity.

19. Defendant failed to properly investigate the Property as required under the Policy and by state statute.

20. Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

21. Defendant failed to investigate the Plaintiffs' claim in a prompt and thorough manner.

22. Defendant intentionally ignored requests to reconsider its wrongful denial of insurance coverage for the Plaintiffs' claim.

3

23.   Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage.  Such acts or omissions were committed intentionally, recklessly, and/or negligently.

24.   Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, and amount equal to such limits for the total constructive loss.

## VIOLATIONS OF THE TENNESSEE
## CONSUMER PROTECTION ACT

25.   Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 24 above as though fully set forth herein.

26.   Defendant has violated the Tennessee Consumer Protection Act of 1977 ("TPCA"), §§ 47-18-101, *et seq.*, by engaging in various unfair, misleading or deceptive acts or practices, including, but not limited to:

(A)   attempting to deceive or misrepresenting or failing to act fairly by not paying Plaintiffs for damages, when Defendant represented in its policy it would provide coverage for covered perils, in violation of Tenn. Code Ann. §§ 47-18-104(a), (b)(5) and (b)(27); and,

(B)   failing to comply with Tenn. Code Ann. §§ 56-7-130 when Defendant had an obligation to comply with Tenn. Code Ann. §§ 56-7-130 in violation of Tenn. Code Ann. §§ 47-18-104(a), and (b)(27).

27.   The Defendant's acts and/or omissions in violation of the TCPA were made willfully and knowingly, thereby entitling Plaintiffs to treble damages and attorney fees pursuant to Tenn. Code Ann. § 47-18-109.

## FRAUD AND MISREPRESENTATION

28.   Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

4

29.     Defendant committed fraud by intentionally or recklessly misrepresenting to the insured Plaintiffs that the reason for denial was because of a misrepresentation of the meaning of terms within the sinkhole endorsement. Such misrepresentation was committed knowingly and recklessly for the purpose of taking undue advantage of the insured and was justifiably relied on by the insured, who accepted the representation as true.

## UNFAIR CLAIMS PRACTICES

30.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 29 above as though fully set forth herein.

31.     Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

(A)     Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105;

(B)     Refusing to pay Plaintiffs' claim without conducting a reasonable investigation in violation of Tenn. Code Ann. § 56-8-105; and,

(C)     Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105.

32.     The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and supports Plaintiffs' claim for Breach of Contract, violations of the TCPA, and bad faith.

## NEGLIGENCE *PER SE*

33.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

34.     Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including but not limited to the following respects:

5

(A) . Defendant denied after receiving a report confirming sinkhole activity Tenn. Code Ann. § 56-7-130 (d)(2);

(B) Defendant ignored a written certification stating that the cause of the claim was sinkhole activity; and,

(C) After additional requests by the Plaintiffs, Defendant still failed to conduct analysis of sufficient scope to eliminate sinkhole activity as the cause of the damage as required under Tenn. Code Ann. § 56-7-130-(d)(2).

35.     As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured. Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and § 47-18-101, *et seq*. and were intended to benefit from these laws.

## BAD FAITH

36. . Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 35 above as though fully set forth herein.

37.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

38.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A) Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B) Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner; and,

(C) Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims.

39.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad

6

faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; (vi) treble damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiffs pray for all relief and damages to which they are entitled under the common law, and the Tennessee Consumer Protection Act, including compensatory damages, treble damages, attorney fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By: _____

*Thompson Trial Group, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiffs

Continuation
Declarations





## HOMEOWNERS POLICY

| Named Insured | Your Agency's Name and Address |
|---|---|
| RICHARD K AND GAIL B DOZIER<br>563 GLEN ECHO DRIVE<br>OLD HICKORY TN 37138 | GEICO INS AGENCY INC<br>1 GEICO BLVD<br>FREDERICKSBURG, VA 22412 |

FILED
3:41
A.M. DEC 16 2013 P.M.

LINDA NEAL CIRCUIT COURT CLERK
WILSON COUNTY, TN

Your Policy Number: 038479682630631   For Policy Service Call: (800) 841-3005
Your Account Number: 038479682   For Claim Service Call: 1-800-CLAIM33

| Policy Period | Location of Residence Premises |
|---|---|
| FROM: 05-31-12 To: 05-31-13 12:01 A.M.<br>STANDARD TIME AT THE RESIDENCE PREMISES | 563 GLEN ECHO DRIVE<br>OLD HICKORY TN 37138 |

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - DWELLING | $ 249,000 | $ 1,026.00 |
| B - OTHER STRUCTURES | 24,900 | INCL |
| C - PERSONAL PROPERTY | 174,301 | INCL |
| D - LOSS OF USE | 74,700 | INCL |

| Section II - Liability Coverages | Limits of Liability | Premium |
|---|---|---|
| E - PERSONAL LIABILITY (BODILY INJURY AND<br>PROPERTY DAMAGE) EACH OCCURRENCE | $ 300,000 | $ 27.00 |
| F - MEDICAL PAYMENTS TO OTHERS-<br>EACH PERSON | 5,000 | INCL |

## Policy Forms and Endorsements

| | | | | |
|---|---|---|---|---|
| HO-3 | (06-91) | Homeowners 3 Special Form | | |
| HA-300 TN | (08-09) | Special Provisions | | |
| HO-827 | (07-02) | Limited Fungi, Other Microbes<br>or Rot Remediation | $5,000 | $ 148.00 |
| 58064 | (06-99) | Value Added Package | | $ 148.00 |

Total Premium      $ 1,201.00

## Your Premium Reflects the Following Credits or State Surcharges

| | |
|---|---|
| Security Credit | -63.00 |
| Loss Free Credit | -180.00 |

Policy Deductible: $ 250.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated
deductible is covered.

Case 3:14-cv-00127 Document 1-2 Filed 01/17/14 Page 8 of 83 PageID #: 12

**Your Insurer:** The Standard Fire Insurance Company
One of The Travelers Property Casualty Companies
One Tower Square, Hartford, CT 06183

## For Your Information

Coverage for your home has been increased by .6% to more adequately reflect the cost to rebuild your home. This adjustment was based on information provided by Marshall & Swift/Boeckh, an independent firm specializing in construction and consumer costs. Please contact your insurance representative if you need to adjust your limits further due to recent modifications, updates, remodeling or you believe the renewal Dwelling Coverage Limit is not appropriate. Your insurance representative can also help with any other policy changes.

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your agent or representative.

These declarations with policy provisions HO-3 (06-91) and any attached endorsements form your Homeowners Insurance Policy. Please keep them with your policy for future reference.

You may be eligible for a policy in a newer product from another of our Travelers companies. How we determine the price for a policy is done differently for the newer product. For example, we may use new criteria or use the existing criteria, such as age of home or construction type, in a different manner. A new product policy might cost you less or more than what you now pay. It may also have different features than your current policy. You may continue with your current policy, or you may request a policy in the new program. We also offer many other ways to save on your premium. Travelers is here to help - so contact your agent or Travelers representative to discuss whether a different Travelers Homeowners insurance policy is right for you.

Case 3:14-cv-00127 Document 1-2 Filed 01/17/14 Page 10 of 83 PageID #: 14

PL-8651 2-11 · 677/0Q2000 DEC#: 23



TRAVELERS

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No insurance is afforded hereunder.

Signature: *Ethel McFadden*

Date:  5.3.2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## VALUE ADDED PACKAGE

For an additional premium, we agree to provide the following coverages:

### DEFINITIONS

Under 6. **"Occurrence,"** the following sentence is added:

It also means offenses which result, during the policy period, in **personal injury.**

The following is added:

10. **"Personal Injury"** means injury arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment, or malicious prosecution;

   b. Libel, slander, or defamation of character; or

   c. Invasion of privacy, wrongful eviction, or wrongful entry.

### SECTION I - COVERAGES

### COVERAGE C - PERSONAL PROPERTY

The Coverage C limit shown on the Declarations is increased to 70% of the limit shown for **COVERAGE A - DWELLING.**

### COVERAGE D - LOSS OF USE

The Coverage D limit shown on the Declarations is increased to 30% of the limit shown for **COVERAGE A - DWELLING.**

### SECTION I - ADDITIONAL COVERAGES

The following **ADDITIONAL COVERAGES** are added:

○ **Ordinance or Law.**

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

   (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

   (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

   c. We do not cover:

   (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   (2) The costs to comply with any ordinance or law which requires any **insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalies, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

○ **Lock Replacement Coverage.**

We will pay you an amount not to exceed $250 that you incur in changing the locks on your **residence premises** when your keys have been stolen. The theft of keys must be reported to the police for this ADDITIONAL COVERAGE to apply.

No deductible applies to this ADDITIONAL COVERAGE.

If this coverage is also provided under any other endorsement on this policy, this is the only limit of liability that will apply. Because this coverage is no longer provided by any other endorsement, an appropriate premium credit will be applied to that endorsement.

# SECTION I - CONDITIONS

Under **3. Loss Settlement**, paragraphs **a.** and **b.** are deleted and replaced by the following:

a. Personal property at the cost to replace or repair at the time of the loss.

For the purposes of this coverage:

(1) Personal property includes awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

(2) Personal property does not include:

(a) Antiques, fine arts, paintings, statuary, and similar articles which, by their inherent nature, cannot be replaced with new articles; and

(b) Articles whose age or history contribute substantially to their value, including but not limited to memorabilia, souvenirs and collector's items.

(3) "Cost to Replace" means the cost at the time of loss of a new article of like kind and quality to the one damaged, destroyed or stolen. When an article is no longer manufactured or is not available, the "cost to replace" means the cost of a new article, similar to that damaged, destroyed or stolen, which is of comparable quality and usefulness.

(4) The limit of liability for loss on any personal property shall not exceed the smallest of the following amounts, subject to any deductible:

(a) The limit of liability of this policy applicable to Coverage C;

(b) Any special limits of liability described in the policy;

(c) The cost to replace, without deduction for depreciation, at the time of loss.

(5) When the full cost to replace or repair an article or articles is more than $2,000, we will not be liable for any loss under any part of this provision unless and until you actually repair or replace the article or articles. You may elect to disregard the Replacement Cost Loss Settlement provisions and make claim under this policy for loss or damage to personal property on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

We have the option either to repair or replace any item under this coverage, or to reimburse the cost to replace it.

b. Structures including swimming pools that are not buildings and the items listed under a. (2) (a) & (b) above at actual cash value at the time of loss, but not exceeding the amount necessary to repair or replace.

The following **CONDITION** is added:

## ADDITIONAL REPLACEMENT COST PROTECTION

(Applies only when loss to the dwelling exceeds the Coverage A Limit of Liability shown in the Declarations)

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

a. If you have:

(1) Allowed us to adjust the Coverage A limit of liability and the premium in accordance with:

(a) The property evaluations we make; and

(b) Any increases in inflation; and

(2) Notified us, within 30 days of completion, of any improvements, alterations or additions to the dwelling which increase the replacement cost of the dwelling by 5% or more;

the provisions of this endorsement will apply after a loss, provided you elect to repair or replace the damaged or destroyed dwelling on the same premises.

b. If there is a loss to the dwelling that exceeds the Coverage A limit of liability shown in the Declarations, for the purpose of settling that loss only:

(1) We will provide an additional amount of insurance, up to 25% of the Coverage A limit of liability; and

(2) The Section I Condition 3. Loss Settlement paragraph c. is deleted and replaced by paragraphs c., d. and e. as follows:

c. The dwelling under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts for like construction and use on the same premises:

(1) The replacement cost of that part of the dwelling damaged or destroyed;

(2) The necessary amount actually spent to repair or replace the damaged or destroyed dwelling; or

(3) The limit of liability under this policy that applies to the dwelling, plus any additional amount provided by this endorsement.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to the dwelling on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

## SECTION II - LIABILITY COVERAGES
## COVERAGE E - PERSONAL LIABILITY

This section is deleted and the following is substituted:

If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which this coverage applies, we will:

a. Pay up to our limit of liability for the damages for which the insured is legally liable. Damages include prejudgement interest awarded against the insured; and

b. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

## SECTION II - EXCLUSIONS

The following is added:

4. Personal Injury insurance does not apply to:

a. Liability assumed by the insured under any contract or agreement except any indemnity obligation assumed by the insured under a written contract directly relating to the ownership, maintenance or use of the premises;

b. Injury caused by a violation of a penal law or ordinance committed by or with the knowledge or consent of an insured;

c. Injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by the insured;

d. Injury arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the business.

e. Civic or public activities performed for pay by an insured; or

f. Injury to you or an insured within the meaning of part a. or b. of insured as defined.

## SECTION II - CONDITIONS

Under 1. Limit of Liability, the following is added.

If Personal Injury coverage is also provided under any other endorsement on this policy, this is the only Personal Injury coverage that will apply. Because this coverage is no longer provided by any other endorsement, an appropriate premium credit will be applied to that endorsement.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION

### DEFINITIONS

The following definition is added:

○ **"Fungi"**

　a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

　b. Under Section II, this does not include any "fungi" that are, are on, or are contained in, products or goods intended for consumption.

### SECTION I – PROPERTY COVERAGES
### COVERAGE D - LOSS OF USE

Paragraphs 1. and 2. are deleted and replaced by the following:

1. **Additional Living Expense**

   If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. However, additional living expense due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere. This period of time is not limited by expiration of this policy.

2. **Fair Rental Value**

   If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage **Limited "Fungi", Other Microbes Or Rot Remediation.**

   Payment will be for the shortest time required to repair or replace such premises. This period of time is not limited by expiration of this policy.

### ADDITIONAL COVERAGES

The following additional coverage is added:

○ **Limited "Fungi", Other Microbes Or Rot Remediation**

　a. If a loss caused by a Peril Insured Against under Section I results in "fungi", other microbes or rot, we will pay for:

　　(1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:

　　　(a) Remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and

　　　(b) Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

　　(2) Any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the "fungi", other microbes or rot makes the "residence premises" not fit to live in. We do not cover loss or expense due to cancellation of a lease or agreement; and

　　(3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

　b. We will pay under this additional coverage only if:

　　(1) The covered loss occurs during the policy period;

　　(2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

　　(3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

　c. The most we will pay under this additional coverage is $ _____ . This is the most we will pay for the total of all loss or costs regardless of the:

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 15 of 83 PageID #: 19

(1) Number of locations or items of property insured under this policy; or

(2) Number of losses or claims made.

d. This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

## SECTION I – PERILS INSURED AGAINST

In form HO-3 (and endorsements HA-15, HA-615, 57000 and 58065, if applicable) paragraph C.7.c. is deleted and replaced by the following:

c. Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

The following exclusion is added:

9. "Fungi", Other Microbes or Rot, meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion does not apply to "fungi", other microbes or rot remediation coverage that may be afforded under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

## SECTION II – EXCLUSIONS

The following exclusion is added under item 1. Coverage E - Personal Liability and Coverage F - Medical Payments To Others:

m. "Bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or in-directly, by "fungi", other microbes or rot. This includes:

(1) The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

(2) Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in m.(1) above;

(3) Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

(4) Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

All other provisions of this policy apply.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 16 of 83 PageID #: 20

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – TENNESSEE

**DEFINITIONS**

The following definitions are added:

10. "fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

      (1) Are, or were, used to hold fuel; and

      (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

   A fuel system does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an insured, used for powering the motor vehicle or watercraft and not used at any time or in any manner for business.

11. "sinkhole collapse" means:

   Actual physical damage to the dwelling and other covered structures:

   1. Arising out of; or

   2. Caused by:

      the sudden settlement or collapse of the earth supporting such property. The settlement or collapse must result from subterranean voids created by the action of water on limestone or similar rock formations.

**SECTION I – PROPERTY COVERAGES**

**COVERAGE C – PERSONAL PROPERTY**
**SPECIAL LIMITS OF LIABILITY**

Items 8. and 9. are deleted and replaced by the following:

8. $5,000 on property, on the residence premises used at any time or in any manner for any business purpose.

9. $1,000 on property away from the residence premises used at any time or in any manner for any business purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits 10. and 11. below.

**SECTION I – ADDITIONAL COVERAGES**

The following additional coverage is added: (Forms HO-2 and HO-3 only)

○ Ordinance or Law.

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 17 of 83 PageID #: 21

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

8. **Collapse** is deleted and replaced by the following:

8. **Collapse.**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b.(2) through (6) above unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damaged covered property.

**SECTION I – EXCLUSIONS**

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

(1) Results in widespread damage;

(2) Affects a substantial area; or

(3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

(1) Any acts of nature;

(2) Any human action or inaction;

(3) The forces of animals, plants or other living or dead organisms; or

(4) Any other natural or artificial process.

2. **Earth Movement** is deleted and replaced by the following:

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 18 of 83 PageID #: 22

2. **Earth Movement**, meaning events that include but are not limited to the following:

   a. Earthquake and earthquake aftershocks;

   b. Volcano activity including but not limited to:

      1. Volcanic Eruption;

      2. Volcanic Explosion;

      3. Effusion of volcanic material; or

      4. Lava Flow;

   c. Mudslide, including mudflow, debris flow, land-slide, avalanche, or sediment;

   d. Subsidence;

   e. Excavation collapse;

   f. Erosion;

   g. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil, or land.

   This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

   The Earth Movement Exclusion does not apply to "sinkhole collapse".

   However, loss caused directly by the specific perils:

   a. fire;

   b. explosion;

   c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

   d. theft;

   following any earth movement is covered.

3. **Water Damage** is deleted and replaced by the following:

3. Water damage, meaning;

   a. Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

   b. any water or water borne material that enters through or backs up from a sewer or drain, or which overflows from a sump, sump pump or related equipment;

   c. any water or water borne material located below the surface of the ground including water or water borne material:

   (1) Which exerts pressure on, seeps, leaks or flows into:

      (a) Any part of the dwelling or other structures;

      (b) The foundation of the dwelling or other structures;

      (c) Any paved surface located on the residence premises; or

      (d) Any spa, hot tub, or swimming pool.

   (2) Which causes earth movement; or

   d. any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

   Direct loss by fire, explosion or theft resulting from water damage will be covered.

## SECTION I – CONDITIONS

3. **Loss Settlement.** In Forms HO-2 and HO-3 only, paragraph c.(4) is deleted and replaced by the following:

   (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair is complete, we will settle the loss according to the provisions of c.(1) and c.(2) above.

   However, if the cost to repair or replace is less than $2,500 we will settle the loss according to the provisions of c.(1) and c.(2) above, whether or not actual repair or replacement is complete.

7. **Other Insurance,** in Form HA-6 only, is deleted and replaced by the following:

7. Other Insurance and Service Agreement.

   a. If a loss covered by this policy is also covered by:

   (1) Other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   (2) A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 19 of 83 PageID #: 23

b. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

## SECTION II - EXCLUSIONS

1. **Coverage E – Personal Liability and Coverage F – Medical Payments to Others:** The following items are added:

   ○ or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

      (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

      (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

      (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

   ○ arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a **fuel system**. This exclusion applies, but is not limited to:

      (1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

      (2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such **bodily injury** or **property damage**, damages, loss, cost, payment or expense; or

      (3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

   However, this exclusion does not apply to **bodily injury** or **property damage** arising out of fire or explosion that results from such escaped or released fuel.

## SECTION II - ADDITIONAL COVERAGES

The following additional coverage is added:

5. **Property Damage** coverage for Military Personnel and Federal Government Employees:

   If an **insured** is:

   a. a United States Government Employee; or

   b. a member of the United States Military,

   We agree to pay for **property damage** to United States government property, for which such **insured** is responsible under applicable rules or regulations.

   Payment for such **property damage** will be at replacement cost. Under this endorsement "replacement cost" is defined as the amount necessary to repair or replace the damaged property with no deduction for depreciation, subject to the Limit of Liability for this Additional Coverage.

   Our Limit of Liability, per **occurrence**, under this Additional Coverage for all damages resulting from any one **occurrence** shall not exceed two months basic pay for the **insured**, as of the time of the **occurrence**.

   We will not pay for **property damage** to:

   a. aircraft

   b. motor vehicles, including vehicles not designed for travel on public roads or subject to registration;

   c. watercraft; or

   d. weapons

   We will not pay for **property damage**:

   a. to the extent of any amount payable under Section I of this policy; or

   b. caused intentionally by any **insured** who is 13 years of age or older.

All other provisions of this policy apply.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 20 of 83 PageID #: 24



*Homeowners Policy Booklet*

*from Travelers Property Casualty*

HO-3 HOMEOWNERS 3 -SPECIAL FORM

# YOUR HOMEOWNERS POLICY QUICK REFERENCE

## DECLARATIONS PAGE
Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Deductible Amounts

|  |  | Beginning On Page |
|---|---|---|
| | AGREEMENT | 1 |
| | DEFINITIONS | 1 |
| **SECTION I PROPERTY COVERAGES** | COVERAGES | 2 |
| | Coverage A - Dwelling | 2 |
| | Coverage B - Other Structures | 2 |
| | Coverage C - Personal Property | 2 |
| | Coverage D - Loss of Use | 4 |
| | Additional Coverages | 4 |
| | PERILS INSURED AGAINST | 7 |
| | EXCLUSIONS | 10 |
| | CONDITIONS | 11 |
| | Your Duties After Loss | 11 |
| | Loss Settlement | 12 |
| **SECTION II LIABILITY COVERAGES** | COVERAGES | 14 |
| | Coverage E - Personal Liability | 14 |
| | Coverage F - Medical Payments to Others | 14 |
| | EXCLUSIONS | 15 |
| | ADDITIONAL COVERAGES | 17 |
| | CONDITIONS | 18 |
| | Limit of Liability | 18 |
| | Duties After Loss | 18 |
| **SECTION I and SECTION II CONDITIONS** | CONDITIONS | 19 |
| | Policy Period | 19 |
| | Cancellation | 19 |
| | Nonrenewal | 20 |

HO-3 (06-91)

# Homeowners 3 Special Form

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse, if a resident of the same household, and "we", "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **"aircraft"** means any contrivance, whether or not tethered, used or designed for air or space flight capable of carrying cargo or people. The contrivance may be either lighter or heavier than the air, engine powered or designed or used to float, glide, soar or control descent.

2. **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. **"business"** includes trade, profession or occupation

4. **"insured"** means you and the following residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of any person named above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **4.a.** or **4.b.** above. A person or organization using or having custody of these animals or watercraft in the course of any **business**, or without permission of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in **4.a.** or **4.b.** above; or

      (2) other persons using the vehicle on an **insured location** with your consent.

5. **"insured location"** means:

   a. the residence premises;

   b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations or which is acquired by you during the policy period for your use as a residence;

   c. any premises used by you in connection with the premises included in **5.a.** or **5.b.**;

   d. any part of a premises not owned by any **insured** but where any **insured** is temporarily residing;

   e. vacant land owned by or rented to any **insured** other than farm land;

   f. land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for any **insured**;

   g. individual or family cemetery plots or burial vaults of any **insured**;

   h. any part of a premises occasionally rented to any **insured** for other than **business purposes**.

   i. any part of a premises, which is not a residence, owned or rented by any **insured** used for other than business purposes to:

      (1) moor or store watercraft;

      (2) garage or store motorized land vehicles; or

      (3) park or store **aircraft**.

6. **"occurrence"** means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

   a. **bodily injury**; or

   b. **property damage**.

7. **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

8. **"residence employee"** means an employee of any **insured** who performs duties in connection with the maintenance or use of the **residence premises**, including household or domestic services, or who performs duties elsewhere of a

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 23 of 83 PageID #: 27

lar nature not in connection with the **business of** any **insured**.

9. **"residence premises"** means the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the **"residence premises"** in the Declarations.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

a. the dwelling on the **residence premises** shown in the Declarations used principally as a private residence, including structures attached to the dwelling on the same or contiguous foundation; and

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**.

THIS COVERAGE DOES NOT APPLY TO:

a. FENCES;

b. EXTERIOR WALLS THAT DO NOT SUPPORT THE ROOF OF THE DWELLING;

c. LAND, INCLUDING LAND ON WHICH THE DWELLING IS LOCATED.

### COVERAGE B - OTHER STRUCTURES

We cover:

Other structures on the **residence premises**, separated from the dwelling by clear space. Structures with a separation from the dwelling and its foundation and linked by only a conduit, deck, fence, patio, utility line, walk, wall, or similar connector means that structure is an other structure. Other structures include but are not limited to:

a. Barns;

b. Exterior walls that do not support the roof of the dwelling;

c. Fences;

d. Garages that are detached from the dwelling;

e. Gazebos;

f. Sheds; or

g. Swimming pools that are exterior to the walls supporting the roof of the dwelling.

THIS COVERAGE DOES NOT APPLY TO LAND, INCLUDING LAND ON WHICH THE OTHER STRUCTURES ARE LOCATED.

WE DO NOT COVER OTHER STRUCTURES:

a. USED IN WHOLE OR IN PART FOR **BUSINESS** PURPOSES: OR

b. RENTED OR HELD FOR RENTAL TO ANY PERSON NOT A TENANT OF THE DWELLING, UNLESS USED SOLELY AS A PRIVATE GARAGE. Use of Coverage B does not reduce the amount of coverage available to you under Coverage A - Dwelling.

### COVERAGE C - PERSONAL PROPERTY

We cover personal property owned or used by any **insured** while it is anywhere in the world. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied by any **insured**. In addition, we will cover at your request, personal property owned by a guest or a **residence employee**, while the property is in any residence occupied by any **insured**.

Our limit of liability for personal property usually located at any **insured's** residence, other than the **residence premises**, is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. THIS LIMIT APPLIES TO THE PERSONAL PROPERTY OF INSUREDS, INCLUDING, BUT NOT LIMITED TO, STUDENTS WHO RESIDE AWAY FROM THE RESIDENCE PREMISES PERIODICALLY FOR THE PERSONAL PROPERTY AT THE LOCATION AWAY. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

SPECIAL LIMITS OF LIABILITY. THESE LIMITS DO NOT INCREASE THE COVERAGE C LIMIT OF LIABILITY. THE SPECIAL LIMIT FOR EACH FOLLOWING NUMBERED CATEGORY IS THE TOTAL LIMIT FOR EACH OCCURRENCE FOR ALL PROPERTY IN THAT NUMBERED CATEGORY.

1. $200 ON MONEY, BANK NOTES, BULLION, GOLD OTHER THAN GOLDWARE, SILVER OTHER THAN SILVERWARE, PLATINUM, COINS AND MEDALS.

2. $1,000 ON SECURITIES, ACCOUNTS, DEEDS, EVIDENCES OF DEBT, LETTERS OF CREDIT, NOTES OTHER THAN BANK NOTES, MANUSCRIPTS, PASSPORTS, TICKETS AND STAMPS.

3. $1,000 ON WATERCRAFT, INCLUDING THEIR TRAILERS, FURNISHINGS, EQUIPMENT AND OUTBOARD MOTORS.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 24 of 83 PageID #: 28

4. $1,000 ON TRAILERS NOT USED WITH WATERCRAFT.

5. $1,000 FOR LOSS BY THEFT OF JEWELRY, WATCHES, FURS, PRECIOUS AND SEMIPRECIOUS STONES.

6. $2,500 FOR LOSS BY THEFT OF SILVERWARE, SILVER-PLATED WARE, GOLDWARE, AND GOLD-PLATED WARE AND PEWTERWARE. THIS INCLUDES FLATWARE, HOLLOWARE, TEA SETS, TRAYS AND TROPHIES MADE OF OR INCLUDING SILVER, GOLD OR PEWTER.

7. $2,000 FOR LOSS BY THEFT OF FIREARMS.

8. $2,500 ON PROPERTY, ON THE RESIDENCE PREMISES USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE;

9. $250 ON PROPERTY AWAY FROM THE RESIDENCE PREMISES USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE. HOWEVER, THIS LIMIT DOES NOT APPLY TO LOSS TO ADAPTABLE ELECTRONIC APPARATUS AS DESCRIBED IN SPECIAL LIMITS 10. AND 11. BELOW.

10. $1000 FOR LOSS TO ELECTRONIC APPARATUS, WHILE IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER. ELECTRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS; OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARATUS.

11. $1000 FOR LOSS TO ELECTRONIC APPARATUS, WHILE NOT IN OR UPON A MOTOR VEHICLE OR OTHER MOTORIZED LAND CONVEYANCE, IF THE ELECTRONIC APPARATUS:

    a. IS EQUIPPED TO BE OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF THE VEHICLE OR CONVEYANCE WHILE RETAINING ITS CAPABILITY OF BEING OPERATED BY OTHER SOURCES OF POWER;

    b. IS AWAY FROM THE RESIDENCE PREMISES; AND

    c. IS USED AT ANY TIME OR IN ANY MANNER FOR ANY BUSINESS PURPOSE.

ELECTRONIC APPARATUS INCLUDES:

    a. ACCESSORIES AND ANTENNAS; OR

    b. TAPES, WIRES, RECORDS, DISCS OR OTHER MEDIA;

    FOR USE WITH ANY ELECTRONIC APPARATUS.

PROPERTY NOT COVERED. WE DO NOT COVER:

1. ARTICLES SEPARATELY DESCRIBED AND SPECIFICALLY INSURED IN THIS OR ANY OTHER INSURANCE;

2. ANIMALS, BIRDS OR FISH;

3. MOTORIZED LAND VEHICLES, EXCEPT WE DO COVER:

    a. MOTORIZED LAND VEHICLES INCLUDING THEIR ACCESSORIES, ATTACHMENTS, EQUIPMENT OR PARTS, NOT SUBJECT TO MOTOR VEHICLE REGISTRATION, USED TO SERVICE AN INSURED'S RESIDENCE.

    b. MOTORIZED LAND VEHICLES, NOT REQUIRING MOTOR VEHICLE REGISTRATION DESIGNED FOR ASSISTING THE HANDICAPPED.

    c. EXTRA ACCESSORIES, EQUIPMENT OR PARTS DETACHED FROM A MOTORIZED LAND VEHICLE SUBJECT TO MOTOR VEHICLE REGISTRATION, OWNED OR IN THE POSSESSION OF ANY INSURED, PROVIDED THAT IMMEDIATELY FOLLOWING THE LOSS TO THE ITEMS CLAIMED THAT VEHICLE FOR WHICH THE ITEMS WERE INTENDED BE FULLY ASSEMBLED WITH ALL OF ITS USUAL ACCESSORIES, EQUIPMENT OR PARTS AND BE CAPABLE OF OPERATION, AS DESIGNED, PROPERLY AND LEGALLY, UPON THE PUBLIC WAYS FOR AN AMOUNT NOT EXCEEDING $500.

4. a. ANY DEVICE OR INSTRUMENT, INCLUDING ANY ACCESSORIES OR ANTENNAS, FOR THE TRANSMITTING, RECORDING, RECEIVING OR REPRODUCTION OF SOUND WHICH IS DESIGNED TO BE SOLELY OPERATED BY POWER FROM THE ELECTRICAL SYSTEM OF A MOTOR VEHICLE, OR ANY TAPE, WIRE, RECORD, DISC OR OTHER MEDIUM FOR USE WITH ANY SUCH DEVICE OR INSTRUMENT WHILE ANY OF THIS PROPERTY IS IN OR UPON A MOTOR VEHICLE;

    b. RADAR DETECTION DEVICES.

5. AIRCRAFT AND AIRCRAFT PARTS;

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 25 of 83 PageID #: 29

6. PROPERTY OF ROOMERS, BOARDERS AND OTHER TENANTS, EXCEPT PROPERTY OF ROOMERS AND BOARDERS RELATED TO ANY INSURED;

7. PROPERTY CONTAINED IN AN APARTMENT REGULARLY RENTED OR HELD FOR RENTAL TO OTHERS BY ANY INSURED;

8. PROPERTY RENTED OR HELD FOR RENTAL TO OTHERS AWAY FROM THE RESIDENCE PREMISES.

## COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total for all the following coverages.

1. **Additional Living Expense.** If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. PAYMENT SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PREMISES OR, IF YOU PERMANENTLY RELOCATE, THE SHORTEST TIME REQUIRED FOR YOUR HOUSEHOLD TO SETTLE ELSEWHERE. This period of time is not limited by expiration of this policy.

2. **Fair Rental Value.** If a loss covered under this section makes that part of the residence premises rented to others or held for rental by you uninhabitable, we cover its fair rental value. PAYMENTS SHALL BE FOR THE SHORTEST TIME REQUIRED TO REPAIR OR REPLACE THE PART OF THE PREMISES RENTED OR HELD FOR RENTAL. This period of time is not limited by expiration of this policy. FAIR RENTAL VALUE SHALL NOT INCLUDE ANY EXPENSE THAT DOES NOT CONTINUE WHILE THAT PART OF THE RESIDENCE PREMISES RENTED OR HELD FOR RENTAL IS UNINHABITABLE.

3. **Prohibited Use.** If a civil authority prohibits you from use of the residence premises as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover any resulting Additional Living expense and Fair Rental Value loss FOR A PERIOD NOT EXCEEDING TWO WEEKS DURING WHICH USE IS PROHIBITED.

WE DO NOT COVER LOSS OR EXPENSE DUE TO CANCELLATION OF A LEASE OR AGREEMENT.

## ADDITIONAL COVERAGES

1. **Debris Removal.**

   We will pay the reasonable expense incurred by you in:

   a. the removal of debris of Covered property PROVIDED COVERAGE IS AFFORDED FOR THE PERIL CAUSING THE LOSS; and

   b. the removal of one or more trees fallen on the residence premises as a result of a peril insured against UNDER SECTION I - PERILS INSURED AGAINST, COVERAGE A - DWELLING AND COVERAGE B - OTHER STRUCTURES, but not more than $500 for any one occurrence regardless of the number of fallen trees.

   Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense. However the availability of this additional amount does not change the $500 maximum payable for tree debris removal under subsection b above.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost INCURRED BY YOU FOR THE NECESSARY MEASURES TAKEN SOLELY TO PROTECT AGAINST FURTHER DAMAGE. IF THE MEASURES TAKEN INVOLVE REPAIR TO OTHER DAMAGED PROPERTY, WE WILL PAY FOR THOSE MEASURES ONLY IF THAT PROPERTY IS COVERED UNDER THIS POLICY AND THE DAMAGE TO THAT PROPERTY IS CAUSED BY AN APPLICABLE PERIL INSURED AGAINST.

   This Additional Coverage:

   a. DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE COVERED PROPERTY.

   b. DOES NOT CHANGE YOUR OBLIGATIONS OR DUTIES, IF THERE IS LOSS OR DAMAGE TO COVERED PROPERTY, AS STATED IN SECTION I - CONDITIONS, CONDITION 2. YOUR DUTIES AFTER LOSS SUBSECTION d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the residence premises, for loss caused by the following Perils Insured Against; Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the residence premises, Vandalism or malicious mischief or Theft.

   WE WILL PAY UP TO 5% OF THE LIMIT OF LIABILITY THAT APPLIES TO THE DWELLING FOR ALL TREES, SHRUBS, PLANTS OR

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 26 of 83 PageID #: 30

LAWNS. NO MORE THAN $500 OF THIS LIMIT WILL BE AVAILABLE FOR ANY ONE TREE, SHRUB OR PLANT. WE DO NOT COVER PROPERTY GROWN FOR BUSINESS PURPOSES.

THIS COVERAGE IS ADDITIONAL INSURANCE.

4. **Fire Department Service Charge.** WE WILL PAY UP TO $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and no more than 30 days while removed. THIS COVERAGE DOES NOT CHANGE THE LIMIT OF LIABILITY APPLYING TO THE PROPERTY BEING REMOVED.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.** We will pay up to $1,000 for:

   a. the legal obligation of any insured to pay because of the theft or unauthorized use of credit cards or fund transfer cards issued to or registered in any insured's name. WE DO NOT COVER USE BY A RESIDENT OF YOUR HOUSEHOLD, A PERSON WHO HAS BEEN ENTRUSTED WITH THE CREDIT CARD OR FUND TRANSFER CARD, OR ANY PERSON, IF ANY INSURED HAS NOT COMPLIED WITH ALL TERMS AND CONDITIONS UNDER WHICH THE CREDIT CARD OR FUND TRANSFER CARD IS ISSUED.

   b. loss to any insured caused by forgery or alteration of any check or negotiable instrument; and

   c. loss to any insured through acceptance in good faith of counterfeit United States or Canadian paper currency.

ALL LOSS RESULTING FROM A SERIES OF ACTS COMMITTED BY ANY ONE PERSON OR IN WHICH ANY ONE PERSON IS CONCERNED OR IMPLICATED IS CONSIDERED TO BE ONE LOSS.

WE DO NOT COVER LOSS ARISING OUT OF BUSINESS PURSUITS OR DISHONESTY OF ANY INSURED.

No deductible applies to this coverage.

Defense:

   a. We may make any investigation and settle any claim or suit that we decide is appropriate. OUR OBLIGATION TO DEFEND ANY CLAIM OR SUIT ENDS WHEN THE AMOUNT WE PAY FOR THE LOSS EQUALS OUR LIMIT OF LIABILITY.

   b. If a claim is made or a suit is brought against any insured for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense any insured or any insured's bank against any suit for the enforcement of payment under Forgery coverage.

7. **Loss Assessment.** We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners. This only applies when the assessment is made as a result of each direct loss to the property; owned by all members collectively, caused by a Peril Insured Against under Coverage A - Dwelling.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises.**

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

THE LIMIT OF $1,000 IS THE MOST WE WILL PAY WITH RESPECT TO ANY ONE LOSS, REGARDLESS OF THE NUMBER OF ASSESSMENTS.

Under **Section I and II Conditions,** Condition 1. **Policy Period** does not apply to this additional coverage.

8. **Collapse.** EXCEPT FOR LOSS CAUSED BY SETTLING, CRACKING, BULGING OR EXPANSION, we insure for risk of direct physical loss to covered property resulting from collapse of a building or any part of a building CAUSED ONLY BY ONE OR MORE OF THE FOLLOWING:

   a. hidden decay;

   b. hidden bird, insect or vermin damage;

   c. weight of contents, equipment, animals or people;

   d. weight of precipitation which collects on a roof;

   e. use of defective material or methods in alteration, construction, remodeling or renovation if the collapse occurs during the course of the alteration, construction, remodeling or renovation.

UNDER ITEMS a.- e., THIS COVERAGE DOES NOT INCLUDE LOSS TO AN AWNING, FENCE, PATIO, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, SWIMMING POOL, SPA, HOT TUB, UNDERGROUND PIPE, FLUE, DRAIN, DECKS, CESSPOOL, SEPTIC TANK, FOUNDATION, RETAINING WALL, BULKHEAD, PIER, WHARF OR DOCK UNLESS THE LOSS IS A DIRECT RESULT OF THE COLLAPSE OF A BUILDING.

f.  The specific Perils that follow:

  (1) **Fire or Lightning**

  (2) **Windstorm or Hail**

  (3) **Explosion**

  (4) **Riot or civil commotion**

  (5) **Aircraft** including self-propelled missiles and spacecraft.

  (6) **Vehicles**

  (7) **Smoke**, meaning sudden and accidental damage from smoke.

  (8) **Theft**

  (9) **Falling objects**

  (10) **Weight of ice, snow or sleet**

  (11) **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, or air conditioning system or from within a household appliance.

  (12) **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, or an appliance for heating water.

  (13) **Freezing** of a plumbing, drainage, heating, air conditioning system or of a household appliance.

  (14) **Sudden and accidental damage from artificially generated electrical current.**

These perils apply to covered building and personal property for loss insured by this additional coverage:

THIS COVERAGE DOES NOT INCREASE ANY LIMIT OF LIABILITY APPLYING TO THE DAMAGED COVERED PROPERTY.

9.  **Glass or Safety Glazing Material**

We cover:

a.  the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window; and

b.  damage to covered property by glass or safety glazing material which is part of a building, storm door or storm window.

THIS COVERAGE DOES NOT INCLUDE LOSS ON THE RESIDENCE PREMISES IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT.

Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

THIS COVERAGE DOES NOT INCREASE THE LIMIT OF LIABILITY THAT APPLIES TO THE DAMAGED PROPERTY.

10.  **Refrigerated Products Coverage**

We will pay up to $500 for damage or loss to the contents of freezers or refrigerated units caused by a power interruption or a mechanical failure of the appliance located on the **residence premises.**

POWER INTERRUPTION SHALL NOT INCLUDE DISCONNECTION OF THE ELECTRICAL SERVICE TO THE APPLIANCE BY UNPLUGGING IT FROM THE ELECTRICAL SOURCE OR BY SWITCHING THE APPLIANCE OR ELECTRIC SOURCE OFF.

Mechanical failure means the breakdown or malfunction of the appliance compressor or its related components resulting in the loss of refrigeration.

WHEN YOU LEARN OF A POWER INTERRUPTION OR MECHANICAL FAILURE OCCURRENCE THAT MAY RESULT IN LOSS OR DAMAGE TO THE CONTENTS OF A FREEZER OR REFRIGERATED UNIT, YOU MUST USE ALL REASONABLE MEANS TO PROTECT THIS PROPERTY FROM FURTHER LOSS OR DAMAGE. IF YOU DO NOT PROTECT THESE REFRIGERATED PRODUCTS FROM FURTHER DAMAGE, THIS COVERAGE WILL NOT APPLY. A $100 DEDUCTIBLE APPLIES TO THIS COVERAGE.

11.  **Excavation Coverage**

We will pay the reasonable cost INCURRED BY YOU UP TO $1,000, for the digging or excavation of the grounds on the **residence premises** to examine or unearth underground:

  a.  Drains;

  b.  Flues;

  c.  Pipes;

  d.  Tanks; or

e. Wiring

TO PREVENT DAMAGE OR RESTORE UTILITY SERVICE ON SUCH PREMISES TO THE:

a. DWELLING;

b. OTHER STRUCTURE(S); OR

c. CONTENTS.

WE WILL PAY ONLY FOR THE DIGGING OR EXCAVATION, REASONABLY NECESSARY UNDER THIS ADDITIONAL COVERAGE. LOSS OR DAMAGE TO THE:

a. DRAINS;

b. FLUES;

c. PIPES;

d. TANKS; OR

e. WIRING

IS NOT COVERED UNDER THIS ADDITIONAL COVERAGE.

WE WILL NOT PAY FOR:

a. ANY DIGGING OR EXCAVATION BEYOND THE UTILITY SHUT-OFF POINT;

b. TREES, SHRUBS, PLANTS OR LAWNS; OR

c. ANY REFILL OR BACKFILL.

12. Spillage or Residue Removal Coverage

We will pay up to $5,000 for the removal of

a. substances accidently spilled on; or

b. residue covering

an interior building item insured under Coverage A - Dwelling or Coverage B Other Structures.

THIS COVERAGE INCLUDES, BUT IS NOT LIMITED TO THE CLEANING, CORRECTION, MODIFICATION, REMOVAL, REPAIR OR RENOVATION OF THE INTERIOR BUILDING ITEM(S) ALTERED, COATED, COVERED OR DAMAGED BY SUCH SPILLAGE OR RESIDUE.

THIS COVERAGE IS LIMITED TO INTERIOR BUILDING ITEMS. WE DO NOT COVER ANY ITEM LOCATED OUTSIDE THE EXTERIOR WALLS OF THE BUILDING OR BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS.

WE WILL NOT PAY FOR SPILLAGE OR RESIDUE REMOVAL IF THE SPILLAGE OR RESIDUE WAS CAUSED BY A PERIL EXCLUDED OR LIMITED BY THIS POLICY. HOWEVER COVERAGE EXCEPTION C. 7.e. UNDER SECTION I - COVERAGE A. DWELLING and COVERAGE B - OTHER STRUCTURES PERILS INSURED AGAINST DOES NOT APPLY TO THIS ADDITIONAL COVERAGE.

This coverage is additional coverage.

## SECTION I - PERILS INSURED AGAINST

COVERAGE A DWELLING AND - COVERAGE B OTHER STRUCTURES

We insure against risks of direct physical loss to property described in COVERAGE A and B, EXCEPT:

A. WE DO NOT COVER ANY LOSS THAT RESULTS FROM A PERIL EXCLUDED OR LIMITED BY THIS POLICY, EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS.

B. WE DO NOT COVER ANY LOSS OR DAMAGE TO YOUR DWELLING OR OTHER STRUCTURES CAUSED DIRECTLY OR INDIRECTLY, CONTRIBUTED TO, OR AGGRAVATED BY DEFECTIVE, INADEQUATE, OR FAULTY PLANNING, CONSTRUCTION, OR MAINTENANCE OF ANY PROPERTY WHETHER ON OR OFF THE insured location RESULTING FROM:

DEFECTIVE, INADEQUATE, OR FAULTY:

1. DEVELOPMENT, SUBDIVIDING, SURVEYING, OR SITING; INCLUDING GRADING, EXCAVATION, AND SOIL COMPACTION;

2. SPECIFICATIONS, BUILDING CODES OR THEIR ENFORCEMENT OR ZONING REQUIREMENTS;

3. ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION, OR REMODELING;

4. MATERIALS RECOMMENDED, SELECTED, SUPPLIED, OR USED IN ALTERATION, CONSTRUCTION, REPAIRS, RENOVATION OR REMODELING;

5. MAINTENANCE.

YOU MAY NOT CLAIM ANY OF THE SITUATIONS INCLUDED IN "B." ABOVE AS A CAUSE OF LOSS. THESE ARE NOT PERILS WE INSURE AGAINST. Ensuing perils, NOT OTHERWISE EXCLUDED OR LIMITED BY THIS POLICY are covered.

C. WE DO NOT COVER:

1. LOSSES EXCLUDED UNDER SECTION I - EXCLUSIONS.

2. LOSS CAUSED BY FREEZING OF A PLUMBING, DRAINAGE, HEATING, AIR

CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR OF A HOUSEHOLD APPLIANCE, OR BY DISCHARGE, LEAKAGE OR OVERFLOW FROM WITHIN THE SYSTEM OR APPLIANCE CAUSED BY FREEZING. THIS EXCLUSION APPLIES ONLY WHILE THE DWELLING IS VACANT, UNOCCUPIED OR BEING CONSTRUCTED UNLESS YOU HAVE USED REASONABLE CARE TO:

  a. MAINTAIN HEAT IN THE BUILDING, OR

  b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

3. LOSS CAUSED BY FREEZING, THAWING, PRESSURE OR WEIGHT OF WATER, SNOW OR ICE, WHETHER DRIVEN BY WIND OR NOT TO A:

  a. FENCE, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, PATIO, SWIMMING POOL, SPA, OR HOT TUB;

  b. FOUNDATION, RETAINING WALL, BULKHEAD; OR

  c. PIER, DECK, WHARF OR DOCK

4. LOSS CAUSED BY THEFT IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED;

5. LOSS CAUSED BY VANDALISM AND MALICIOUS MISCHIEF OR BREAKAGE OF GLASS AND SAFETY GLAZING MATERIALS IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT;

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;

7. LOSS CAUSED BY:

  a. WEAR AND TEAR, MARRING, DETERIORATION, OR FAILURE TO MAINTAIN;

  b. INHERENT VICE, LATENT DEFECT, MECHANICAL BREAKDOWN;

  c. SMOG, RUST OR OTHER CORROSION, MOLD, FUNGUS, WET OR DRY ROT;

  d. SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS;

  e. DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE OF POLLUTANTS UNLESS THE DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE OR ESCAPE IS ITSELF CAUSED BY A PERIL INSURED AGAINST UNDER COVERAGE C OF THIS POLICY. POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT, INCLUDING SMOKE, VAPOR, SOOT, FUMES, ACIDS, ALKALIS, CHEMICALS AND WASTE. WASTE INCLUDES MATERIALS TO BE RECYCLED, RECONDITIONED OR RECLAIMED EXCEPT AS PROVIDED BY SECTION I - ADDITIONAL COVERAGE 12. Spillage or Residue Removal Coverage;

  f. SETTLING, CRACKING, SHRINKING, BULGING OR EXPANSION OF DRIVEWAYS, ROADWAYS, WALKWAYS, PAVEMENTS, PATIOS, FOUNDATIONS, WALLS, FLOORS, ROOFS OR CEILINGS;

  g. BIRDS, VERMIN, RODENTS OR INSECTS; OR

  h. ANIMALS OWNED OR KEPT BY ANY INSURED.

If any of these cause water to suddenly escape from a plumbing, heating, air conditioning system or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. HOWEVER, "TEARING OUT" DOES NOT INCLUDE ANY DIGGING OR EXCAVATION FOR THE EXAMINATION OF UNDERGROUND DRAINS, FLUES, PIPES, TANKS OR WIRING, EXCEPT AS PROVIDED BY SECTION I - ADDITIONAL COVERAGES - 11. Excavation Coverage. WE DO NOT COVER LOSS TO THE SYSTEM OR APPLIANCE FROM WHICH THIS WATER ESCAPED.

8. LOSS CAUSED BY COLLAPSE OTHER THAN PROVIDED AS ADDITIONAL COVERAGE 8.

UNDER ITEMS B. AND C. 2 THROUGH 7 ANY ENSUING LOSS NOT EXCLUDED IS COVERED.

## COVERAGE C PERSONAL - PROPERTY

We insure for direct physical loss to property described in Coverage C caused only by the perils named below, unless excepted or excluded by SECTION I EXCLUSIONS:

1. **Fire or lightning.**

2. **Windstorm or hail.**

   THIS PERIL DOES NOT INCLUDE LOSS TO THE PROPERTY CONTAINED IN A BUILDING BY RAIN, SNOW, SLEET, SAND OR DUST UNLESS THE DIRECT FORCE OF WIND OR HAIL DAMAGES THE BUILDING CAUSING AN OPENING IN A ROOF OR WALL AND THE RAIN, SNOW, SLEET, SAND OR DUST ENTERS THROUGH THIS OPENING.

   THIS PERIL INCLUDES LOSS TO WATERCRAFT AND THEIR TRAILERS, FURNISHINGS, EQUIPMENT, AND OUTBOARD ENGINES OR MOTORS, ONLY WHILE INSIDE A FULLY ENCLOSED BUILDING.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY SMOKE FROM AGRICULTURAL SMUDGING OR INDUSTRIAL OPERATIONS.

8. **Vandalism or malicious mischief.**

9. **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

   THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT:

   a. COMMITTED BY ANY INSURED, OR ANY PERSON RENTING THE RESIDENCE PREMISES;

   b. IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED; OR

   c. FROM ANY PART OF A RESIDENCE PREMISES RENTED FOR MORE THAN 60 DAYS ANNUALLY BY AN INSURED TO OTHER THAN AN INSURED.

THIS PERIL DOES NOT INCLUDE LOSS CAUSED BY THEFT THAT OCCURS AWAY FROM THE RESIDENCE PREMISES OF:

   a. PROPERTY WHILE AT ANY OTHER RESIDENCE OWNED, RENTED TO, OR OCCUPIED BY ANY INSURED, EXCEPT WHILE ANY INSURED IS TEMPORARILY RESIDING THERE. PROPERTY OF A STUDENT WHO IS AN INSURED IS COVERED WHILE AT A RESIDENCE AWAY FROM HOME IF THE STUDENT HAS BEEN THERE AT ANY TIME DURING THE 45 DAYS IMMEDIATELY BEFORE THE LOSS;

   b. WATERCRAFT, INCLUDING THEIR FURNISHINGS, EQUIPMENT AND OUTBOARD ENGINES OR MOTORS; OR

   c. TRAILERS AND CAMPERS.

10. **Falling Objects**

    THIS PERIL DOES NOT INCLUDE LOSS TO PROPERTY CONTAINED IN A BUILDING UNLESS THE ROOF OR AN OUTSIDE WALL OF THE BUILDING IS FIRST DAMAGED BY A FALLING OBJECT. DAMAGE TO THE FALLING OBJECT ITSELF IS NOT INCLUDED.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or from within a household appliance.

    THIS PERIL DOES NOT INCLUDE LOSS:

    a. TO THE SYSTEM OR APPLIANCE FROM WHICH THE WATER OR STEAM ESCAPED;

    b. CAUSED BY OR RESULTING FROM FREEZING, except AS PROVIDED IN THE PERIL FREEZING (14. FREEZING) BELOW; OR

    c. ON THE RESIDENCE PREMISES CAUSED BY ACCIDENTAL DISCHARGE OR OVERFLOW WHICH OCCURS OFF THE RESIDENCE PREMISES.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

    WE DO NOT COVER LOSS CAUSED BY OR RESULTING FROM FREEZING UNDER THIS PERIL.

14. Freezing of a plumbing, drainage, heating, automatic fire protective sprinkler system or air conditioning system or of a household appliance. THIS PERIL DOES NOT INCLUDE LOSS ON THE RESIDENCE PREMISES WHILE THE DWELLING IS UNOCCUPIED, UNLESS YOU HAVE USED REASONABLE CARE TO:

   a. MAINTAIN HEAT IN THE BUILDING: OR

   b. SHUT OFF THE WATER SUPPLY AND DRAIN THE SYSTEM AND APPLIANCES OF WATER.

15. Sudden and accidental damage from artificially generated electrical current. THIS PERIL DOES NOT INCLUDE LOSS TO A TUBE, TRANSISTOR OR SIMILAR ELECTRONIC COMPONENT.

## SECTION I - EXCLUSIONS

WE DO NOT COVER LOSS RESULTING DIRECTLY OR INDIRECTLY FROM:

1. ORDINANCE OR LAW, MEANING ESTABLISHING, ENFORCEMENT OF, OR THE FAILURE TO ESTABLISH OR ENFORCE ANY ORDINANCE, REGULATION OR LAW REGULATING THE CONSTRUCTION, REPAIR, DEMOLITION OR ZONING OF A BUILDING OR OTHER STRUCTURE, UNLESS SPECIFICALLY PROVIDED UNDER THIS POLICY.

2. EARTH MOVEMENT, MEANING ANY LOSS CAUSED BY, RESULTING FROM, CONTRIBUTED TO, OR AGGRAVATED BY EVENTS THAT INCLUDE, BUT ARE NOT LIMITED TO THE FOLLOWING:

   a. EARTHQUAKE AND EARTHQUAKE AFTERSHOCKS

   b. VOLCANO ACTIVITY INCLUDING BUT NOT LIMITED TO:

      1. VOLCANIC ERUPTION;

      2. VOLCANIC EXPLOSION;

      3. EFFUSION OF VOLCANIC MATERIAL; OR

      4. LAVA FLOW;

   c. MUDSLIDE INCLUDING MUDFLOW, DEBRIS FLOW, LANDSLIDE, AVALANCHE, OR SEDIMENT;

   d. SINKHOLE;

   e. SUBSIDENCE;

   f. EXCAVATION COLLAPSE;

   g. EROSION;

   h. ANY EXPANSION, SHIFTING, RISING, SINKING, CONTRACTING, OR SETTLING OF THE EARTH, SOIL, OR LAND.

   THIS EXCLUSION APPLIES WHETHER OR NOT THE EARTH, SOIL, OR LAND IS COMBINED OR MIXED WITH WATER OR ANY OTHER LIQUID OR MATERIAL NATURAL OR MAN-MADE.

However, loss caused directly by the specific perils:

   a. fire;

   b. explosion;

   c. breakage of building or dwelling glass or safety glazing material, including storm doors or windows; or;

   d. theft,

following any EARTH MOVEMENT is covered.

3. WATER DAMAGE, MEANING:

   a. FLOOD, SURFACE WATER, WAVES, WAVE WASH, TIDAL WATER, OVERFLOW OF A BODY OF WATER, OR SPRAY FROM ANY OF THESE, WHETHER OR NOT A RESULT OF PRECIPITATION; OR DRIVEN BY WIND;

   b. WATER

      (1) WHICH BACKS UP THROUGH SEWERS AND DRAINS;

      (2) WHICH OVERFLOWS FROM A SUMP; OR

   c. WATER BELOW THE SURFACE OF THE GROUND, INCLUDING WATER:

      (1) WHICH EXERTS PRESSURE ON, OR SEEPS OR LEAKS THROUGH A BUILDING, DRIVEWAY, ROADWAY, WALKWAY, PAVEMENT, FOUNDATION, SPA, HOT TUB, SWIMMING POOL OR OTHER STRUCTURE;

      (2) WHICH CAUSES EARTH MOVEMENT.

   ALL LOSS FROM WATER DAMAGE IS EXCLUDED NO MATTER IF LOSS OR DAMAGE WAS CAUSED BY, OR AGGRAVATED BY ANY OTHER PERIL IN ANY SEQUENCE. However, direct loss by fire, explosion or theft resulting from WATER DAMAGE will be covered.

4. POWER FAILURE, MEANING THE FAILURE OF POWER OR OTHER UTILITY SERVICE IF THE FAILURE TAKES PLACE OFF THE RESIDENCE PREMISES. IF A PERIL INSURED AGAINST

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 32 of 83 PageID #: 36

ENSUES ON THE RESIDENCE PREMISES, WE WILL PAY ONLY FOR LOSS CAUSED BY THE ENSUING PERIL.

5. **NEGLECT,** MEANING NEGLECT OF THE INSURED TO USE ALL REASONABLE MEANS TO SAVE AND PRESERVE PROPERTY AT AND AFTER THE TIME OF A LOSS, OR WHEN PROPERTY IS ENDANGERED BY A PERIL INSURED AGAINST.

6. **WAR,** INCLUDING UNDECLARED WAR, CIVIL WAR, INSURRECTION, REBELLION, REVOLUTION, WARLIKE ACT BY A MILITARY FORCE OR MILITARY PERSONNEL, DESTRUCTION OR SEIZURE OR USE FOR A MILITARY PURPOSE, AND INCLUDING ANY CONSEQUENCE OF ANY OF THESE. DISCHARGE OF A NUCLEAR WEAPON SHALL BE DEEMED A WARLIKE ACT EVEN IF ACCIDENTAL.

7. **NUCLEAR HAZARD,** TO THE EXTENT SET FORTH IN THE NUCLEAR HAZARD CLAUSE OF SECTION I - CONDITIONS.

8. **INTENTIONAL LOSS,** MEANING ANY LOSS ARISING OUT OF ANY ACT COMMITTED:

   (1) BY OR AT THE DIRECTION OF AN INSURED; and

   (2) WITH THE INTENT TO CAUSE A LOSS.

   LOSS OR DAMAGE EXCLUSIONS 1-8 APPLY ABOVE EVEN IF A COVERED PERIL IS A CONCURRENT CAUSE OF LOSS. Ensuing loss specifically accepted by the terms of this policy is covered.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, WE SHALL NOT BE LIABLE:

   a. TO THE **INSURED** FOR AN AMOUNT GREATER THAN THE **INSURED'S** INTEREST; nor

   b. FOR MORE THAN THE APPLICABLE LIMIT OF LIABILITY.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE NOTICE TO US OR OUR/YOUR AGENT;

   b. IN ADDITION, GIVE IMMEDIATE OR AS SWIFT AS POSSIBLE, A REPORT TO THE POLICE, IF THE LOSS IS THEFT;

   c. NOTIFY THE CREDIT CARD COMPANY OR FUND TRANSFER CARD COMPANY IN THE CASE OF LOSS UNDER ADDITIONAL COVERAGE - 6. CREDIT CARD, FUND TRANSFER CARD COVERAGE;

   d. (1) PROTECT THE PROPERTY FROM FURTHER DAMAGE;

   (2) MAKE REASONABLE AND NECESSARY REPAIRS TO PROTECT THE PROPERTY; AND

   (3) KEEP AN ACCURATE RECORD OF REPAIR EXPENDITURES;

   e. PREPARE AN INVENTORY OF DAMAGED PERSONAL PROPERTY SHOWING IN DETAIL THE:

   (1) QUANTITY;

   (2) DESCRIPTION;

   (3) ACTUAL CASH VALUE; AND

   (4) AMOUNT OF LOSS.

   ATTACH TO THE INVENTORY ALL:

   (1) BILLS;

   (2) RECEIPTS; AND

   (3) RELATED DOCUMENTS THAT SUBSTANTIATE THE FIGURES IN THE INVENTORY;

   f. AS OFTEN AS WE REASONABLY REQUIRE:

   (1) SHOW THE DAMAGED PROPERTY;

   (2) PROVIDE US WITH RECORDS AND DOCUMENTS AND PERMIT US TO MAKE COPIES; AND

   (3) SUBMIT TO EXAMINATION UNDER OATH, WHILE NOT IN THE PRESENCE OF ANY OTHER INSURED AND SIGN THE SAME;

   g. SUBMIT TO US, WITHIN 60 DAYS AFTER WE REQUEST, YOUR SIGNED, SWORN STATEMENT OF LOSS WHICH SETS FORTH, TO THE BEST OF YOUR KNOWLEDGE AND BELIEF:

   (1) THE TIME AND CAUSE OF LOSS;

   (2) INTEREST OF THE INSURED AND ALL OTHERS IN THE PROPERTY INVOLVED AND ALL ENCUMBRANCES ON THE PROPERTY;

   (3) OTHER INSURANCE WHICH MAY COVER THE LOSS;

(4) CHANGES IN TITLE OR OCCUPANCY OF THE PROPERTY DURING THE TERM OF THE POLICY;

(5) SPECIFICATIONS OF ANY DAMAGED BUILDING AND DETAILED ESTIMATES FOR REPAIR OF THE DAMAGE;

(6) AN INVENTORY OF DAMAGED PERSONAL PROPERTY DESCRIBED IN 2e. ABOVE;

(7) RECEIPTS FOR ADDITIONAL LIVING EXPENSES INCURRED AND RECORDS SUPPORTING THE FAIR RENTAL VALUE LOSS;

(8) EVIDENCE OR AFFIDAVIT SUPPORTING A CLAIM UNDER THE CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE, STATING THE AMOUNT AND CAUSE OF LOSS.

3. **Loss Settlement**. Covered property losses are settled as follows:

a. PERSONAL PROPERTY AND STRUCTURES THAT ARE NOT BUILDINGS AT ACTUAL CASH VALUE AT THE TIME OF LOSS, BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

b. CARPETING, DOMESTIC APPLIANCES, AWNINGS, OUTDOOR ANTENNAS AND OUTDOOR EQUIPMENT, WHETHER OR NOT ATTACHED TO BUILDINGS, AT ACTUAL CASH VALUE AT THE TIME OF LOSS BUT NOT EXCEEDING THE AMOUNT NECESSARY TO REPAIR OR REPLACE;

c. BUILDINGS UNDER COVERAGE A OR B AT REPLACEMENT COST WITHOUT DEDUCTION FOR DEPRECIATION, SUBJECT TO THE FOLLOWING:

(1) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS 80% OR MORE OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE COST OF REPAIR OR REPLACEMENT, WITHOUT DEDUCTION FOR DEPRECIATION, BUT NOT EXCEEDING THE SMALLEST OF THE FOLLOWING AMOUNTS:

(a) THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

(b) THE REPLACEMENT COST OF THAT PART OF THE BUILDING DAMAGED FOR EQUIVALENT CONSTRUCTION AND USE ON THE SAME PREMISES; OR

(c) THE AMOUNT ACTUALLY AND NECESSARILY SPENT TO REPAIR OR REPLACE THE DAMAGED BUILDING.

(2) IF AT THE TIME OF LOSS THE AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING IS LESS THAN 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, WE WILL PAY THE LARGER OF THE FOLLOWING AMOUNTS, BUT NOT EXCEEDING THE LIMIT OF LIABILITY UNDER THIS POLICY APPLYING TO THE BUILDING;

(a) THE ACTUAL CASH VALUE OF THAT PART OF THE BUILDING DAMAGED; OR

(b) THAT PROPORTION OF THE COST TO REPAIR OR REPLACE, WITHOUT DEDUCTION FOR DEPRECIATION, OF THAT PART OF THE BUILDING DAMAGED, WHICH THE TOTAL AMOUNT OF INSURANCE IN THIS POLICY ON THE DAMAGED BUILDING BEARS TO 80% OF THE REPLACEMENT COST OF THE BUILDING.

(3) IN DETERMINING THE AMOUNT OF INSURANCE REQUIRED TO EQUAL 80% OF THE FULL REPLACEMENT COST OF THE BUILDING IMMEDIATELY PRIOR TO THE LOSS, YOU SHALL DISREGARD THE VALUE OF EXCAVATIONS, FOUNDATIONS, PIERS AND OTHER SUPPORTS WHICH ARE BELOW THE UNDERSURFACE OF THE LOWEST BASEMENT FLOOR OR, WHERE THERE IS NO BASEMENT, WHICH ARE BELOW THE SURFACE OF THE GROUND INSIDE THE FOUNDATION WALLS, AND UNDERGROUND FLUES, PIPES, WIRING AND DRAINS.

(4) WE WILL PAY NO MORE THAN THE ACTUAL CASH VALUE OF THE DAMAGE UNTIL ACTUAL REPAIR OR REPLACEMENT IS COMPLETE. ONCE ACTUAL REPAIR IS COMPLETE, we will settle the loss according to the provisions of c.(1) and c.(2) above. However,

IF THE COST TO REPAIR OR RE-PLACE IS LESS THAN $1,000 we will settle the loss ACCORDING TO THE PROVISIONS OF c. (1) and c. (2) above, whether or not actual repair or replacement is complete.

(5) YOU MAY DISREGARD THE RE-PLACEMENT COST LOSS SETTLE-MENT PROVISIONS AND MAKE CLAIM UNDER THIS POLICY FOR LOSS OR DAMAGE TO BUILDINGS ON AN AC-TUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AF-TER LOSS FOR ANY ADDITIONAL LI-ABILITY ON A REPLACEMENT COST BASIS.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. REPAIR OR REPLACE ANY PART TO RE-STORE THE PAIR OR SET TO ITS VALUE BEFORE THE LOSS; OR

   b. PAY THE DIFFERENCE BETWEEN AC-TUAL CASH VALUE OF THE PROPERTY BEFORE AND AFTER THE LOSS.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, WE WILL PAY ONLY THE PROPORTION OF THE LOSS THAT THE LIMIT OF LIABILITY THAT APPLIES UNDER THIS POLICY BEARS TO THE TOTAL AMOUNT OF INSURANCE COVERING THE LOSS.

8. **Suit Against Us.** No action shall be brought UN-LESS THERE HAS BEEN COMPLIANCE WITH THE POLICY PROVISIONS AND THE ACTION IS STARTED WITHIN ONE YEAR AFTER THE OCCURRENCE CAUSING LOSS OR DAMAGE.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you UNLESS SOME OTHER PER-SON NAMED IN THE POLICY IS LEGALLY EN-TITLED TO RECEIVE PAYMENT. Loss will be payable 60 days after we receive your proof of loss and;

    a. Reach agreement with you; or

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any **insured**.

12. **Mortgage Clause.** The word "mortgagee" in-cludes trustee. If a mortgage is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as inter-ests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. notifies us of any change in ownership, occu-pancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium;

    c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions re-lating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date of cancellation or nonrenewal takes place.

If we pay the mortgagee for any loss and deny payment to you:

    a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. LOSS CAUSED BY THE NUCLEAR HAZARD SHALL NOT BE CONSIDERED LOSS CAUSED BY FIRE, EXPLOSION, OR SMOKE, WHETHER THESE PERILS ARE SPECIFICALLY NAMED IN OR OTHERWISE, INCLUDED WITHIN THE PERILS INSURED AGAINST IN SECTION I.

c. THIS POLICY DOES NOT APPLY UNDER SECTION I TO LOSS CAUSED DIRECTLY OR INDIRECTLY BY NUCLEAR HAZARD, EXCEPT THAT DIRECT LOSS BY FIRE RESULTING FROM THE NUCLEAR HAZARD IS COVERED.

15. **Inflation Protection Coverage**

a. During the term of this policy, we will increase the limit of liability for Coverage A monthly at the rate of 1/12 of the annual residential building cost percentage change factors as determined by our cost calculation method which is based on a nationally recognized construction cost index.

b. The limit of liability shown on the Declarations Page for Coverage A will be revised yearly at each renewal to reflect any changes in building costs during the policy period as determined in paragraph 1 above. Any adjustment in premium resulting from this change will be made on the basis of rates in use by us at the time the change is made. You have the right to refuse this change prior to the renewal date by contacting your agent or us.

16. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

---

## SECTION II - LIABILITY COVERAGES

### COVERAGE E - PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

### COVERAGE F-MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **residence employees**. As to others, this coverage applies only:

a. to a person on the **insured location** with the permission of any **insured**; or

b. to a person off the **insured location**, if the bodily injury:

(1) arises out of a condition on the **insured location** or the ways immediately adjoining;

(2) is caused by the activities of any **insured**;

(3) is caused by a residence employee in the course of the residence employee's employment by any insured; or

(4) is caused by an animal owned by or in the care of any insured.

---

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to bodily injury or property damage:

   a. which is expected or intended by any insured;

   b. Arising out of or in connection with a business engaged in by any insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the business;

   NOTE: The furnishing of home day care services for

   (1) a fee, or

   (2) other compensation

   by the insured and the rendering of such services two or more days per week for a period of two or more hours per day constitutes one type of many different business pursuits.

   c. Arising out of the rental or holding for rental of any premises by any insured. This exclusion does not apply to the rental or holding for rental of an insured location:

      (1) on an occasional basis if used only as a residence.

      (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

      (3) in part, as an office, school, studio or private garage;

   d. arising out of the rendering or failing to render professional services;

   e. arising out of a premise:

      (1) owned by any insured;

      (2) rented to any insured; or

      (3) rented to others by any insured;

      that is not an insured location;

   f. arising out of:

      (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to any insured;

      (2) the entrustment by any insured of a motor vehicle or any other motorized land conveyance to any person; or

      (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

   This exclusion does not apply to:

      (1) a trailer not towed by or carried on a motorized land conveyance.

      (2) a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

         (a) not owned by any insured; or

         (b) owned by any insured and on an insured location.

      (3) a motorized golf cart when used to play golf on a golf course.

      (4) a vehicle or conveyance not subject to motor vehicle registration which is:

         (a) used to service any insured's residence;

         (b) designed for assisting the handicapped; or

         (c) in dead storage on an insured location.

   g. arising out of:

      (1) the ownership, maintenance, use, loading or unloading of watercraft described below;

      (2) the entrustment by any insured of a watercraft described below to any person; or

      (3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

      Excluded watercraft are those that are principally designed to be propelled by engine power, jet power or electric motor, or are sailing vessels, whether owned by or rented to any insured. This exclusion does not apply to watercraft:

         (1) that are not sailing vessels and are powered by:

(a) inboard or inboard-out drive engine or motor power of 50 horsepower or less not owned by any **insured**;

(b) inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to any **insured**;

(c) one or more outboard engines or motors with 25 total horse-power or less;

(d) one or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by any **insured**;

(e) outboard engines or motors of more than 25 total horsepower owned by any **insured** if:

(i) you acquire them prior to the policy period; and

(a) you declare them at policy inception;

(b) your intention to insure is reported to us in writing within 45 days after you acquire the outboard motors.

(ii) you acquire them during the policy period.

This coverage applies for the policy period.

(2) that are sailing vessels, with or without auxiliary power:

(a) less than 26 feet in overall length;

(b) 26 feet or more in overall length not owned by or rented to any insured.

(3) that are stored;

h. rising out of:

(1) the ownership, maintenance, use, loading or unloading of any **aircraft**;

(2) the entrustment by any **insured** of an **aircraft** to any person; or

(3) vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an **aircraft**.

Exclusions e, f, g and h do not apply to **bodily injury** to any **residence employee** arising out of and in the course of the **residence employee's** employment by any **insured**.

i. caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) undeclared war, civil war, insurrection, rebellion or revolution;

(2) warlike act by military force or military personnel; or

(3) destructive seizure or use for a military purpose. Discharge of a nuclear weapon will be deemed a war-like act even if accidental;

j. which arises out of the transmission of a communicable disease by any **insured**.

k. Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

l. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of any Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

2. **Coverage E - Personal Liability**, does not apply to:

a. Liability:

(1) for any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) under any contract or agreement. However, this exclusion does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an **insured location**; or

(b) where the liability of others is assumed by the **insured** prior to an **occurrence**;

unless excluded in (1) above or elsewhere in this policy;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to

HO-3 (06-91) Case 3:14-cv-00127 Document 1-2 Filed 01/17/14 Page 38 of 83 PageID #: 42

property damage caused by fire, smoke or explosion;

d. bodily injury to any person eligible to receive any benefits:

(1) voluntarily provided; or

(2) required to be provided;

by the insured under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

e. bodily injury or property damage for which an insured under this policy:

(1) is also an insured under a nuclear energy liability policy; or

(2) would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is a one issued by:

(1) American Nuclear Insurers;

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

f. bodily injury to any person who is related by blood, marriage, or adoption to a covered person and who is a resident of the household of that person; or bodily injury to you.

3. Coverage F - Medical Payments to Others, does not apply to bodily injury:

a. to a residence employee if the bodily injury:

(1) occurs off the insured location; and

(2) does not arise out of or in the course of the residence employee's employment by an insured;

b. to any person eligible to receive benefits:

(1) voluntarily provided; or

(2) required to be provided;

under any:

(1) workers' compensation law;

(2) non-occupational disability law; or

(3) occupational disease law;

c. from any:

(1) nuclear reaction;

(2) nuclear radiation; or

(3) radioactive contamination;

all whether controlled or uncontrolled or however caused; or

(4) any consequence of any of these.

d. to any person, other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

a. expenses incurred by us and costs taxed against any insured in any suit we defend;

b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage E. We are not obligated to apply for or furnish any bond;

c. reasonable expenses incurred by any insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting us in the investigation or defense of any claim or suit;

d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the

judgment which does not exceed the limit of liability that applies.

2. First Aid Expenses. We will pay expenses for first aid to others incurred by any insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. Damage to Property of Others. We will pay at replacement cost, up to $500 per occurrence for property damage to property of others caused by any insured. We will not pay for property damage:

a. to the extent of any amount recoverable under Section I of this policy;

b. caused intentionally by any insured who is 13 years of age or older;

c. to property owned by any insured;

d. to property owned by or rented to a tenant of any **insured**, or a resident in your household; or

e. arising out of:

(1) a **business** engaged in by any **insured**;

(2) any act or omission in connection with a premises owned, rented or controlled by any **insured**, other than the **insured location**; or

(3) the ownership, maintenance, or use of **aircraft**, **watercraft**, **motor vehicles** or all other **motorized land conveyances**.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured**. .

4. **Loss Assessment**. We will pay up to $1,000 for your share of any loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. **bodily injury** or **property damage** not excluded under Section II of this policy; or,

b. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) the director, officer or trustee is elected by the members of the corporation or association of property owners; and

(2) the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the **residence premises**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II - Coverage E Personal Liability Exclusion 2.a.(1);

2. Under Section I & II - Conditions, Condition 1. Policy Period.

## SECTION II - CONDITIONS

1. **Limit of Liability**. Our total liability under Coverage E for all damages resulting from any one **occurrence** will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of **insureds**, claims made, or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **occurrence**.

Our total liability under Coverage F for all medical expense payable for **bodily injury** to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You will help us by seeing that these duties are performed:

a. give written notice to us or our agent as soon as is practical, which sets forth:

(1) the identity of the policy and **insured**;

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, help us

(1) to make settlement;

(2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any **insured;**

(3) with the conduct of suits and attend hearings and trials;

(4) to secure and give evidence and to obtain the attendance of witnesses;

d. At our option, either:

(1) Submit to us, within 60 days after we request, your signed, sworn statement of loss; or

(2) Submit to an oral examination under oath setting forth to the best of your knowledge and belief:

(a) the time and cause of loss;

(b) a description of the accident or occurrence, and;

(c) any other information we may reasonably require.

e. under this coverage - Damage to the Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if within the **insured's** control;

f. the **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of **bodily injury.**

4. **Duties of an Injured Person - Coverage F - Medical Payments to Others.** The injured person or someone acting for the injured person will:

a. give us written proof of claim, under oath if required, as soon as practical;

b. authorize us to obtain copies of medical reports and records.

The injured person will submit to physical examination by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments to Others.** Payment under this coverage is not an admission of liability by any **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any **insured.** Also, no action with respect to Coverage E can be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of any Insured.** Bankruptcy or insolvency of any **insured** shall not relieve us of any of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTION I AND SECTION II - CONDITIONS

1. **POLICY PERIOD.** THIS POLICY APPLIES ONLY TO LOSS UNDER SECTION I OR **BODILY INJURY** OR **PROPERTY DAMAGE** UNDER SECTION II, WHICH OCCURS DURING THE POLICY PERIOD.

YOU MAY CONTINUE THIS POLICY, SUBJECT TO OUR CONSENT, FOR SUCCESSIVE PERIODS BY PAYING REQUIRED PREMIUMS WHEN DUE.

2. **CONCEALMENT OR FRAUD.** THE ENTIRE POLICY WILL BE VOID IF, WHETHER BEFORE OR AFTER A LOSS, ANY **INSURED** HAS:

a. INTENTIONALLY CONCEALED OR MISREPRESENTED ANY MATERIAL FACT OR CIRCUMSTANCE;

b. ENGAGED IN FRAUDULENT CONDUCT; OR

c. MADE FALSE STATEMENTS; RELATING TO THIS INSURANCE.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy WITHOUT ADDITIONAL PREMIUM CHARGE, that change will automatically apply to your insurance as of the date we implement the change in your state PROVIDED THAT THIS DATE FALLS WITHIN 60 DAYS PRIOR TO OR DURING THE POLICY PERIOD STATED IN THE DECLARATIONS. THIS LIBERALIZATION CLAUSE DOES NOT APPLY TO CHANGES IMPLEMENTED THROUGH INTRODUCTION OF A SUBSEQUENT EDITION OF OUR POLICY.

4. **Cancellation.**

Case 6:14-cv-00127   Document 1-2   Filed 01/17/14   Page 41 of 83 PageID #: 45
HO-3 (06-91)

a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

b. WE MAY CANCEL THIS POLICY FOR THE REASONS STATED IN THIS CONDITION BY NOTIFYING YOU IN WRITING OF THE DATE CANCELLATION TAKES EFFECT. THIS CANCELLATION NOTICE MAY BE DELIVERED TO YOU, OR MAILED TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

   (1) WHEN YOU HAVE NOT PAID THE PREMIUM, WHETHER PAYABLE TO US OR TO OUR AGENT OR UNDER ANY FINANCE OR CREDIT PLAN, WE MAY CANCEL AT ANY TIME BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (2) WHEN THIS POLICY HAS BEEN IN EFFECT FOR LESS THAN 60 DAYS AND IS NOT A RENEWAL WITH US, WE MAY CANCEL FOR ANY REASON BY NOTIFYING YOU AT LEAST 10 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (3) WHEN THIS POLICY HAS BEEN IN EFFECT FOR 60 DAYS OR MORE, OR AT ANY TIME IF IT IS A RENEWAL WITH US, WE MAY CANCEL IF THERE HAS BEEN A MATERIAL MISREPRESENTATION OF FACT WHICH IF KNOWN TO US WOULD HAVE CAUSED US NOT TO ISSUE THE POLICY OR IF THE RISK HAS CHANGED SUBSTANTIALLY SINCE THE POLICY WAS ISSUED. THIS CAN BE DONE BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

   (4) WHEN THIS POLICY IS WRITTEN FOR A PERIOD LONGER THAN ONE YEAR, WE MAY CANCEL FOR ANY REASON AT ANNIVERSARY BY NOTIFYING YOU AT LEAST 30 DAYS BEFORE THE DATE CANCELLATION TAKES EFFECT.

c. WHEN THIS POLICY IS CANCELLED, THE PREMIUM FOR THE PERIOD FROM THE DATE OF CANCELLATION TO THE EXPIRATION DATE WILL BE REFUNDED. WHEN YOU REQUEST CANCELLATION IN THE FIRST POLICY YEAR, THE RETURN PREMIUM WILL BE BASED ON OUR SHORT-RATE TABLE. OTHERWISE, THE RETURN PREMIUM WILL BE PRO RATA.

d. IF THE RETURN PREMIUM IS NOT REFUNDED WITH THE NOTICE OF CANCELLATION OR WHEN THIS POLICY IS RETURNED TO US, WE WILL REFUND IT WITHIN A REASONABLE TIME AFTER THE DATE CANCELLATION TAKES EFFECT.

5. NON-RENEWAL. WE MAY ELECT NOT TO RENEW THIS POLICY. WE MAY DO SO BY DELIVERING TO YOU, OR MAILING TO YOU AT YOUR MAILING ADDRESS SHOWN IN THE DECLARATIONS WRITTEN NOTICE AT LEAST 30 DAYS BEFORE THE EXPIRATION DATE OF THIS POLICY. PROOF OF MAILING SHALL BE SUFFICIENT PROOF OF NOTICE.

6. Assignment. ASSIGNMENT OF THIS POLICY SHALL NOT BE VALID UNLESS WE GIVE OUR WRITTEN CONSENT.

7. Subrogation. Any insured may waive in writing before a loss all rights of recovery against any person. IF NOT WAIVED, WE MAY REQUIRE AN ASSIGNMENT OF RIGHTS OF RECOVERY FOR A LOSS TO THE EXTENT THAT PAYMENT IS MADE BY US.

   IF AN ASSIGNMENT IS SOUGHT, ANY INSURED SHALL SIGN AND DELIVER RELATED PAPERS AND COOPERATE WITH US IN ANY REASONABLE MANNER.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

8. Death. If any person named in the Declarations or the spouse, if a resident of the same household dies;

   a. we insure the legal representative of the deceased BUT ONLY WITH RESPECT TO THE PREMISES AND PROPERTY OF THE DECEASED COVERED UNDER THE POLICY AT THE TIME OF DEATH;

   b. INSURED INCLUDES:

      (1) ANY MEMBER OF YOUR HOUSEHOLD WHO IS AN INSURED AT THE TIME OF YOUR DEATH, BUT ONLY WHILE A RESIDENT OF THE RESIDENCE PREMISES; AND

      (2) WITH RESPECT TO YOUR PROPERTY, THE PERSON HAVING PROPER TEMPORARY CUSTODY OF THE PROPERTY UNTIL APPOINTMENT AND QUALIFICATION OF A LEGAL REPRESENTATIVE.

HO-3 (06-91)   Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 42 of 83 PageID #: 46

9. **PREMIUM.** THE PREMIUM STATED IN THE DECLARATIONS IS THE INITIAL PREMIUM FOR THIS POLICY. ON EACH RENEWAL, CONTINUATION OR ANNIVERSARY OF THE EFFECTIVE DATE OF THIS POLICY, THE PREMIUM SHALL BE COMPUTED BY US IN ACCORDANCE WITH RULES AND RATES IN EFFECT.

This policy is signed for the company which is the insurer under this policy.

James M. Michener
Secretary

Robert P. Restrepo Jr.
Chief Executive Officer
Personal Lines

IN WITNESS WHEREOF, the Company has executed and attested these presents.

Travelers Property Casualty
A Member of Travelers Group

# KEMPER
## PREFERRED

PO Box 2802
Clinton, IA 52733-2802

April 22, 2013

CERTIFIED MAIL RETURN RECEIPT REQUESTED
Article Number: 7012 2920 0001 9006 6018

Thompson Trial Group, P.A.
Attn: Alecia Gonzalez
4725 N. Lois Ave
Tampa, FL 33614

Regarding:          John & Mona Morgan
                    121 Gwendolyn Ct La Vergne, TN 37086
Claim Number:       161 KF 221848
Policy Number:      RC978316
Date of Loss:       06/15/12

Dear Ms. Gonzalez:

As requested, please find enclosed a certified copy of the insured's policy of insurance and their endorsements.

Should you have any questions, regarding this claim, or need additional information, feel free to contact me at the numbers listed below.

Sincerely,
Unitrin Auto & Home Insurance Company

Joey Borsuk
National Property Claims Office
PO Box 2802
Clinton, IA 52733-2802
704-587-7855-Phone
704-587-7780-Fax

**CERTIFIED DUPLICATE COPY**

I, Scott Sprague Forms Manager of Merastar Insurance Company, do hereby certify the attached to be true copies of policy number RC 978316 for policy periods from 02/03/2012 to 02/03/2013, issued by Unitrin Auto and Home Insurance Company to John H Morgan and Mona S Morgan.

Signature of Authorized Person
*Scott Sprague*
*Forms Manager*

4/16/13
Date of Signature

<u>CERTIFIED DUPLICATE COPY</u>

I, Scott Sprague Forms Manager of Merastar Insurance Company, do hereby certify the attached to be true copies of policy number RC 978316 for policy periods from 02/03/2012 to 02/03/2013, issued by Unitrin Auto and Home Insurance Company to John H Morgan and Mona S Morgan.

_Signature of Authorized Person_

Signature of Authorized Person
*Scott Sprague*
*Forms Manager*

4/16/13

Date of Signature

<u>CERTIFIED DUPLICATE COPY</u>

I, Scott Sprague Forms Manager of Merastar Insurance Company, do hereby certify the attached to be true copies of policy number RC 978316 for policy periods from 02/03/2012 to 02/03/2013, issued by Unitrin Auto and Home Insurance Company to John H Morgan and Mona S Morgan.

Signature of Authorized Person
*Scott Sprague*
*Forms Manager*

Date of Signature

# KEMPER
## PREFERRED

*PARKER & WATTS INSURANCE LLC*
*4825 TROUSDALE DR STE 224*
*NASHVILLE, TN 37220*
*Agency Phone (615)833-3300*

**Insurance Provided By**

**UNITRIN AUTO AND HOME INSURANCE COMPANY**
12926 Gran Bay Pkwy W - Jacksonville, FL 32258

| Named Insured and Mailing Address | Policy Number | Policy Period |
|---|---|---|
| 0     7012032 | RC 978316 | Effective: 02-03-2012 |
| JOHN H MORGAN | Producer Code | Expiration: 02-03-2013 |
| MONA S MORGAN | 41-7701 | 12:01 a.m. standard time. |
| 121 GWENDOLYN CT | | |
| LA VERGNE, TN 37086 | | |

## DECLARATIONS - PACKAGE PLUS

| POLICY SUMMARY INFORMATION | Annual Premium |
|---|---|
| RESIDENCE PREMIUM (SECTION I AND SECTION II) | $ 781.00 |
|   PAYMENT EXPECTED FROM   INSURED | |
| AUTOMOBILE PREMIUM (SECTION III) | $ 2,902.00 |
|   PAYMENT EXPECTED FROM   INSURED | |
| TOTAL POLICY PREMIUM | $ 3,683.00 |

For information about additional costs to you related
to this policy, please read endorsement BC0001.

COVERAGE APPLIES ONLY IF A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE.
DETAILS CONCERNING SPECIFIC COVERAGES AND PREMIUMS FOR YOUR POLICY CAN BE FOUND ON
THE FOLLOWING PAGES.

Countersignature of Authorized Representative

## RESIDENCE COVERAGE INFORMATION

### HOME INFORMATION

The residence premises covered by this policy is located at the address below:

121 GWENDOLYN CT
LA VERGNE    TN  37086

### COVERAGES

| | Limit of Liability | Annual Premium |
|---|---|---|

Coverage is provided where a limit of liability is shown for the coverage. The Section I Blanket Property Limit of Liability shown represents 200% of the calculated Dwelling (Coverage A) replacement value of $ 217,000. This Blanket Property Limit of Liability is the total amount of insurance for your Dwelling, Other Structures, Personal Property and Loss of Use Coverage.

**SECTION I – PROPERTY COVERAGES**

| | Limit of Liability | Annual Premium |
|---|---|---|
| Blanket Property Limit | $ 434,000 | $ 717.00 |

**SECTION II – LIABILITY COVERAGES**

| | Limit of Liability | Annual Premium |
|---|---|---|
| Personal Liability: each occurrence | $ 300,000 | $ 21.00 |
| Medical Payments to Others: each person | $ 3,000 | |

**DEDUCTIBLE -- SECTION I** – In case of loss we cover only that part of the loss over the deductible stated below:

| | | |
|---|---|---|
| Policy | $ 1,000 | INCLUDED |

| | | |
|---|---|---|
| Total Premium for Endorsements | | $ 43.00 |

**TOTAL RESIDENCE PREMIUM**    $ 781.00

### HOMEOWNERS DISCOUNTS AND CREDITS APPLIED

The Total Residence premium shown above reflects savings to you as follows:

Package Discount        Loss Free Discount        Res Safety Package Credit

### RATING INFORMATION

| Construction  Frame | Not more than  750 ft from hydrant | Miles from Dept.  3 |
|---|---|---|
| County  RUTHERFORD | Occupied 1 Family Dwelling | Yr Construction 1989 |
| | Prot Class  5  Terr.  86 | State 41 |
| | | Tier/Price Lvl  E |

### HOMEOWNERS ENDORSEMENT(S)

| Number | Edition Date | Description | | Annual Premium |
|---|---|---|---|---|
| VS1226 | 10-94 | PACKAGE PLUS POLICY | | |
| AK5743 | 08-09 | POLICY INFORMATION | | |
| AK3924 | 06-11 | HOME CHANGES TO YOUR POLICY | | |
| VS2105 | 01-06 | NON-SMOKING HOUSEHOLD DISCOUNT | | |
| VS2292 | 04-09 | EXTENDED DWELLING REPLACEMENT COST COV | $ | 43.00 |
| | | Additional Amount of Insurance  25% | | |
| | | Total Amount of Insurance 125% | | |
| VS2483 | 06-11 | PACKAGE PLUS CLASSIC | | |
| VS2209 | 01-11 | SECTION I - EXCLUSIONS | | |
| BC0001 | 10-11 | ADDITIONAL CHARGES AND FEES ENDORSEMENT | | |
| VK1012 | 02-85 | RESIDENCE SAFETY PACKAGE | | |
| HO2599 | 01-07 | SINKHOLE LOSS COVERAGE | | |
| VS2478 | 08-11 | LIMITED FUNGI, WET OR DRY ROT | | |
| | | Section I  Liability $  10,000 | | |
| | | Section II Liability $  50,000 | | |
| HO0496 | 04-91 | NO COVERAGE FOR HOME DAY CARE BUSINESS | | |

# VEHICLE COVERAGE INFORMATION

## SUMMARY OF COVERED VEHICLE(S) AND PREMIUM(S)

| | | | | | Term Premium |
|---|---|---|---|---|---|
| **SECTION III** | | | | | |
| No. | Year | Make | Model | Vehicle Identification No | |
| 1 | 2005 | CHEV | SILVERADO | 1GCEC14T15Z244556 | $   607.00 |
| 2 | 2012 | CHEV | EQUINOX LT | 2GNALDEK1C6124956 | $ 1,177.00 |
| 3 | 2002 | MAZDA | TRIBUTE LX | 4F2YU09172KM23961 | $   672.00 |
| 4 | 1989 | CHEV | K2500 | 2GCFK29KXK1229524 | $   446.00 |

## TOTAL AUTOMOBILE PREMIUM                                   $ 2,902.00

## ACCIDENT(S) OR VIOLATION(S)

| Date/Type | Date/Type | Date/Type |
|---|---|---|
| 03-12-2010 ACCIDENT | 12-14-2011 ACCIDENT | 01-13-2010 VIOLATION |

## VEHICLE 1 INFORMATION  Garage Location:     LA VERGNE, TN 37086

| Year | Make | Model | Vehicle Identification No. | Sym | Class Code | Territory | Tier |
|---|---|---|---|---|---|---|---|
| 2005 | CHEV | SILVERADO | 1GCEC14T15Z244556 | | 317220120 | 325 | |

| | Limit of Liability | Term Premium | Operator 1 Information |
|---|---|---|---|
| | | | JOHN H MORGAN Driver St/License Number |

| | | | | | |
|---|---|---|---|---|---|
| A. Liability | | | | | |
| Bodily Injury - Each Person | $ | 100,000 | | | |
| Bodily Injury - Each Accident | $ | 300,000 | $ | 118.00 | |
| Property Damage | | | | | |
| Each Accident | $ | 100,000 | $ | 94.00 | |
| B. Medical Payment | | | | | |
| Each Person | $ | 1,000 | $ | 8.00 | |
| C. Uninsured Motorists | | | | | |
| Bodily Injury - Each Person | $ | 100,000 | | | |
| Bodily Injury - Each Accident | $ | 300,000 | $ | 81.00 | |
| Property Damage | | | | | |
| Each Accident | $ | 100,000 | | | |
| D. Damage To Your Auto | | | | | |
| Actual Cash Value (ACV) minus deductible shown | | | | | |
| Collision Loss | $ | 500 | $ | 192.00 | |
| Comprehensive Loss | $ | 100 | $ | 84.00 | |
| Towing and Labor Cost | | | | | |
| Per Disablement | $ | 50 | $ | 4.00 | |
| Total Premium for Vehicle | | | | | |
| Endorsements Listed Below | | | $ | 26.00 | |

Operator 1 Information
JOHN H MORGAN
Driver St/License Number

| Date of Birth | Sex | Marital Status |
|---|---|---|
| 11-16-1956 | M | Married |

## TOTAL VEHICLE PREMIUM                                    $   607.00

## CREDITS APPLIED TO THE VEHICLE ABOVE

| Multi-Car | Passive Restraints | Anti-Lock Brakes |
|---|---|---|
| Multi-Policy | | |

## VEHICLE 2 INFORMATION  Garage Location:        LA VERGNE, TN 37086

| Year | Make | Model | Vehicle Identification No. | Sym | Class Code | Territory | Tier |
|------|------|-------|---------------------------|-----|-----------|-----------|------|
| 2012 | CHEV | EQUINOX LT | 2GNALDEK1C6124956 | | 346723010 | 325 | |

| | Limit of Liability | | Term Premium | | Operator 3 Information |
|---|---|---|---|---|---|
| | | | | | JENNIFER D MORGAN |
| | | | | | Driver St/License Number |

| | Limit of Liability | Term Premium |
|---|---|---|
| **A. Liability** | | |
| Bodily Injury - Each Person | $ 100,000 | |
| Bodily Injury - Each Accident | $ 300,000 | $ 200.00 |
| **Property Damage** | | |
| Each Accident | $ 100,000 | $ 161.00 |
| **B. Medical Payment** | | |
| Each Person | $ 1,000 | $ 15.00 |
| **C. Uninsured Motorists** | | |
| Bodily Injury - Each Person | $ 100,000 | |
| Bodily Injury - Each Accident | $ 300,000 | $ 81.00 |
| **Property Damage** | | |
| Each Accident | $ 100,000 | |
| **D. Damage To Your Auto** | | |
| Actual Cash Value (ACV) minus deductible shown | | |
| Collision Loss | $ 500 | $ 557.00 |
| Comprehensive Loss | $ 100 | $ 133.00 |
| **Towing and Labor Cost** | | |
| Per Disablement | $ 50 | $ 4.00 |
| **Total Premium for Vehicle** | | |
| Endorsements Listed Below | | $ 26.00 |
| **TOTAL VEHICLE PREMIUM** | | $ 1,177.00 |

Operator 3 Information
JENNIFER D MORGAN
Driver St/License Number

| Date of Birth | Sex | Marital Status |
|---|---|---|
| 07-13-1978 | F | Single |

**CREDITS APPLIED TO THE VEHICLE ABOVE**

| Multi-Car | Passive Restraints | Anti-Lock Brakes |
|---|---|---|
| Multi-Policy | | |

## VEHICLE 3 INFORMATION  Garage Location:        LA VERGNE, TN 37086

| Year | Make | Model | Vehicle Identification No. | Sym | Class Code | Territory | Tier |
|------|------|-------|---------------------------|-----|-----------|-----------|------|
| 2002 | MAZDA | TRIBUTE LX | 4F2YU09172KM23961 | | 337242010 | 325 | |

| | Limit of Liability | Term Premium |
|---|---|---|
| **A. Liability** | | |
| Bodily Injury - Each Person | $ 100,000 | |
| Bodily Injury - Each Accident | $ 300,000 | $ 165.00 |
| **Property Damage** | | |
| Each Accident | $ 100,000 | $ 131.00 |
| **B. Medical Payment** | | |
| Each Person | $ 1,000 | $ 13.00 |
| **C. Uninsured Motorists** | | |
| Bodily Injury - Each Person | $ 100,000 | |
| Bodily Injury - Each Accident | $ 300,000 | $ 81.00 |
| **Property Damage** | | |
| Each Accident | $ 100,000 | |
| **D. Damage To Your Auto** | | |
| Actual Cash Value (ACV) minus deductible shown | | |
| Collision Loss | $ 500 | $ 177.00 |
| Comprehensive Loss | $ 100 | $ 75.00 |
| **Towing and Labor Cost** | | |
| Per Disablement | $ 50 | $ 4.00 |
| **Total Premium for Vehicle** | | |
| Endorsements Listed Below | | $ 26.00 |
| **TOTAL VEHICLE PREMIUM** | | $ 672.00 |

Operator 2 Information
MONA S MORGAN
Driver St/License Number

| Date of Birth | Sex | Marital Status |
|---|---|---|
| 11-18-1955 | F | Married |

**CREDITS APPLIED TO THE VEHICLE ABOVE**

| Multi-Car | Passive Restraints | Anti-Lock Brakes |
|---|---|---|
| Multi-Policy | | |

## VEHICLE 4 INFORMATION Garage Location:        LA VERGNE, TN 37086

| Year | Make | Model | Vehicle Identification No. | Sym | Class Code | Territory | Tier |
|------|------|-------|---------------------------|-----|-----------|-----------|------|
| 1989 | CHEV | K2500 | 2GCFK29KXK1229524 |  | 300140010 | 325 |  |

| | Limit of Liability | Term Premium |
|---|---|---|
| **A. Liability** | | |
| Bodily Injury - Each Person | $    100,000 | |
| Bodily Injury - Each Accident | $    300,000 | $    137.00 |
| **Property Damage** | | |
| Each Accident | $    100,000 | $    110.00 |
| **B. Medical Payment** | | |
| Each Person | $      1,000 | $     14.00 |
| **C. Uninsured Motorists** | | |
| Bodily Injury - Each Person | $    100,000 | |
| Bodily Injury - Each Accident | $    300,000 | $     81.00 |
| **Property Damage** | | |
| Each Accident | $    100,000 | |
| **D. Damage To Your Auto** | | |
| **Actual Cash Value (ACV) minus deductible shown** | | |
| Collision Loss | | |
| Comprehensive Loss | $        100 | $    104.00 |
| Towing and Labor Cost | | |
| Per Disablement | | |
| Total Premium for Vehicle | | |
| Endorsements Listed Below | | |

## TOTAL VEHICLE PREMIUM                          $    446.00

## CREDITS APPLIED TO THE VEHICLE ABOVE

| Multi-Car | Anti-Lock Brakes | Multi-Policy |
|---|---|---|

## LOSS PAYEE(S)                                                    Effective | Expires

| | | Effective | Expires |
|---|---|---|---|
| 2 ALLY FINANCIAL | PO BOX 674 | 02-03-2012 | 01-2018 |
| MINNEAPOLIS, MN  55440 | | | |

## VEHICLE ENDORSEMENT(S)

| Number | Edition Date | Description | Veh No | Term Premium |
|--------|------|-------------|--------|--------------|
| PP0452 | 03-00 | UNINSURED MOTORISTS COVERAGE -- TN | | |
| PP1301 | 12-99 | COV FOR DAMAGE TO YOUR AUTO EXCLUSION | | |
| AU750 | 06-94 | INCREASED LIMITS TRANSPORTATION EXPENSE | 1 | $     26.00 |
| | | $ 35 EACH DAY/$ 1050 MAXIMUM | | |
| AU750 | 06-94 | INCREASED LIMITS TRANSPORTATION EXPENSE | 2 | $     26.00 |
| | | $ 35 EACH DAY/$ 1050 MAXIMUM | | |
| AU750 | 06-94 | INCREASED LIMITS TRANSPORTATION EXPENSE | 3 | $     26.00 |
| | | $ 35 EACH DAY/$ 1050 MAXIMUM | | |
| AU849 | 03-02 | AUTO CHANGES TO YOUR POLICY | | |
| PP0309 | 04-86 | SPLIT LIABILITY LIMITS | | |
| PP0404 | 04-86 | SPLIT UNINSURED MOTORISTS LIMITS | | |
| AU909 | 06-05 | ELECTRONIC EQUIPMENT COVERAGE | | |
| BC0001 | 10-11 | ADDITIONAL CHARGES AND FEES ENDORSEMENT | | |

## POLICY ATTACHMENT(S)

| Number | Edition Date | Description |
|--------|------|-------------|
| AK1838 | 03-89 | FAIR CREDIT REPORTING ACT |
| AK5167 | 11-11 | PRIVACY STATEMENT |
| VS1047 | 05-03 | CONSUMER INFORMATION RIGHTS & CONTACT |
| AK5295 | 06-09 | CLAIM SERVICE CARD |
| AK5458 | 11-06 | FLOOD NOTICE |
| AK5088 | 11-10 | NOTICE OF COVERAGE INCREASE |
| ILN098 | 09-03 | TENNESSEE FRAUD STATEMENT |
| AK3378 | 06-08 | UM/ALT BASIC COV OFFER/REJECTION FORM |
| AK5657 | 02-09 | ID CARDS |

Insured Name  JOHN H MORGAN                              Policy Number  KC  978316

POLICY ATTACHMENT(S)

| Number | Edition Date | Description |
|--------|--------------|-------------|
| AK4569 | 10-09 | KEMPER GLASS SERVICE |
| AK5601 | 03-09 | FAIR CREDIT REPORTING ACT-IMPT NOTICE |



KEMPER
PREFERRED

## Package Plus Policy

The company providing the insurance afforded
by this policy is designated on the Declarations
Page.

PLEASE READ YOUR POLICY CAREFULLY.

This policy is a legal contract between you
and us.

# UNITRIN AUTO AND HOME
# INSURANCE COMPANY

A stock insurance company, herein called the Company

Home Office:  5784 Widewaters Parkway
De Witt, NY 13214
(904) 245-5600

IN WITNESS THEREOF, the Unitrin Auto and Home Insurance Company
has caused this policy to be signed by its President and Secretary.

President

Secretary

AK 5743 (08 09)

# ADDITIONAL CHARGES AND FEES ENDORSEMENT

All Coverage Parts included in this policy are subject to the following conditions.

This endorsement describes the charges and fees "you" agree to pay when "you" use one of the plans "we" offer. For the purpose of this endorsement only, "you" and "your" also means the person responsible for paying for this insurance coverage and for making the decision to keep this coverage in force. For the purpose of this endorsement only "we", "us" or "our" also means the company on the declarations page that issued this policy.

## ADDITIONAL CHARGES AND FEES

In addition to the premium listed on the declarations page, "you" may be required to pay other charges and fees depending on the payment plan "you" have selected and "your" payment history.

I. Billing Charges

"You" will be required to pay installment charges (Billing Charges) as shown below unless "you" pay the premium in full for the entire policy term on or before the policy effective date.

A. If "you" make payments to "us" via recurring charge to "your" credit/debit card pursuant to a company approved payment plan for which "you" have authorized "us" to charge/debit recurring payments, a $ 1.00   Billing Charge will be charged for each payment transaction.

B. If "you" make payment to "us" via "our" automatic recurring withdrawal of payment due from "your" checking or savings account, a $ 1.00   Billing Charge will be charged for each payment transaction.

C. If "you" make payments to "us" other than shown in A. or B. above, a $ 6.00   Billing Charge will be charged for each bill.

II. Other Charges And Fees Which May Be Associated With "Your" Policy Based Upon "Your" Payment History

Nothing in this section II shall be deemed to require "us" to continue or reinstate "your" policy if "we" do not receive "your" payment when due.

A. LATE CHARGES

"We" may accept late payment from "you". The fact that "we" may accept late payment from "you" one or more times does not effectuate any waiver of "our" right to cancel or refuse to reinstate "your" policy at other times when "your" payment is not timely.

If "we" do not receive payment within three (3) calendar days after its due date, a Late Charge in the amount of $20.00   will be added to "your" balance. This charge will be included on the next bill issued along with any applicable billing charges.

B. RETURNED PAYMENT FEES

If "your" payment to "us" is justifiably dishonored or not permitted by the financial institution to which "you" directed "we" should receive payment, "you" must pay "us" a $25.00   Returned Payment Fee. This fee will be included on the next bill issued after "we" receive notice of the dishonor from the financial institution.

C. REINSTATEMENT FEES

"You" must pay "us" a Reinstatement Fee if "we" agree to reinstate "your" policy after it has been cancelled for non-payment during the policy term. The fee, which will be no greater than $15.00  , will be added to "your" balance and will be included on the first bill issued after the reinstatement.

III. Cumulative Nature of Charges and Fees

The charges and fees set forth above in section II may be cumulative. For example, a late payment that "we" agree to accept could result in one or more additional Billing Charge(s), Late Charges, Returned Payment Fees, or Reinstatement Fees.

All other provisions of this policy apply.

BC 0001 (10 11)

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 57 of 83 PageID #: 61

# IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE

RICHARD DOZIER and
GAIL DOZIER

    Plaintiffs,

v.

STANDARD FIRE
INSURANCE COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

JURY DEMAND

2013-CV-685

Case No.

**FILED**

A.M. DEC 16 2013 P.M.

LINDA NEAL, CIRCUIT COURT CLERK
WILSON COUNTY, TN

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

COME NOW the Plaintiffs, **RICHARD DOZIER** and **GAIL DOZIER**, (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel, and pursuant to Rule 36.01 of the Tennessee Rules of Civil Procedure, hereby request Defendant, **STANDARD FIRE INSURANCE COMPANY**, ("Defendant"), respond to Plaintiffs' First Request for Admissions to Defendant within forty-five (45) days of the date of service and admit or deny the following:

1. That all times material hereto, Plaintiffs were and are the owners of that certain real property located at **563 Glen Echo Drive, Old Hickory, Tennessee 37138**, (hereinafter referred to as "Insured Property").

2. That Defendant issued or renewed a policy of homeowner's insurance, **Policy Number 038479682 633 9**, (hereinafter referred to as the "Policy") to Plaintiffs on the Insured Property.

3. That at all times material hereto, the subject Policy of homeowner's insurance was/is in effect for the Insured Property.

4. That the above-referenced Policy of insurance covers any and all damage to the Insured Property that was caused by sinkhole activity.

5. That **Policy Number** 038479682 633 9 is an all-risk policy.

6.  That there is damage to the structure located at the Insured Property.

7.  That Plaintiffs made a timely application for insurance benefits under the Policy of homeowner's insurance.

8.  That Defendant has not sent to Plaintiffs a notice of nonrenewal before this claim was initiated.

9.  That Defendant has not sent to Plaintiffs a notice of cancellation before this claim was initiated.

10. That Defendant unilaterally retained Rimkus Consulting Group, Inc, (hereinafter "Rimkus") to determine if a probable geotechnical cause of the distress at the Insured Property could be determined and, if so, to make repair recommendations.

11. That Rimkus determined that the damage to the Insured Property could not have been caused by sinkhole activity.

12. That based on the results of the Subsidence Investigation Report, prepared by Rimkus at Defendant's request, Defendant advised Plaintiffs that Rimkus had concluded that the damage to the Insured's property was caused by an excluded peril under the policy and not sinkhole activity.

13. That Defendant has not paid Plaintiffs' claim.

14. That Defendant failed to consult with Plaintiffs in its retention of Rimkus to perform the subsidence investigation.

15. That Defendant relied upon the above-referenced Rimkus report and the recommendations contained therein to deny Plaintiffs' claim.

16. That the duty to ensure a subsidence investigation compliant with Tennessee Statute § 56-7-130 7 lies with Defendant.

17. That Plaintiffs have complied with all conditions precedent to obtaining benefits under Plaintiffs' Policy of homeowner's insurance from Defendant.

18. That Plaintiffs have complied with all conditions precedent to the maintenance of this action.

19. That Defendant has breached its policy of insurance by failing to pay all benefits to Plaintiffs for claim of damages to the home located at Insured Property.

2

20. That Defendant owes prejudgment interest, expert fees, costs, and attorneys' fees of this action.

21. That Defendant has failed to comply with all of the statutory requirements of Tennessee Statute 56-7-130.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing Request for Admissions has been served contemporaneously with Plaintiffs' Complaint and Responses to same are due within forty-five (45) days from the date of service.

By: _____

*Thompson Trial Group, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiffs

3

# IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE

RICHARD DOZIER and
GAIL DOZIER,

       Plaintiffs,

v.

STANDARD FIRE
INSURANCE COMPANY,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

JURY DEMAND

Case No. 2013-cv-685

**FILED**

A.M. DEC 16 2013 P.M.

LINDA NEAL, CIRCUIT COURT CLERK
WILSON COUNTY, TN

## PLAINTIFFS' NOTICE OF SERVING FIRST SET OF INTERROGATORIES TO DEFENDANT

COME NOW the Plaintiffs, RICHARD DOZIER and GAIL DOZIER, (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel, pursuant to Rule 33.01 of the Tennessee Rules of Civil Procedure, and hereby give notice of serving Plaintiffs' First Set of Interrogatories to Defendant, STANDARD FIRE INSURANCE COMPANY, which is required to provide its answers in writing under oath within forty-five (45) days from the date of service.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing Interrogatories has been

served contemporaneously with Plaintiffs' Complaint.

By: _____

*Thompson Trial Group, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone:    (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiff

2

## INSTRUCTIONS

1.  You are instructed either to produce document as they are kept in the usual course of business or to produce document organized and labeled to correspond with the categories in these Interrogatories. Documents are to be produced in full and unexpurgated form.

2.  These Interrogatories shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produced, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.  If any documents covered by these interrogatories are withheld by reason of a claim of privilege, work- product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced indentifying each such document for which the privilege is claimed specifically by its nature (e.g. letter, memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of these Interrogatories to which such document relates.

4.  If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.  In the event that any document called for by these Interrogatories has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.  All objections to any category of documents to be produced pursuant to theses Interrogatories or to any definition or instruction they contain shall be in writing and delivered to Plaintiffs' counsel within the time provided in the Tennessee Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by the Court.

7.  Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8.  Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Defendants, if any.

## DEFINITIONS

A.   As used herein, "Defendant," "you" or "your" shall mean Defendant, STANDARD FIRE INSURANCE COMPANY, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.   The term "Plaintiffs" shall mean RICHARD DOZIER and GAIL DOZIER, their representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom they have control or have been hired, retained or employed by them to act on their behalf for any purpose whatsoever.

C.   The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D.   The term "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E.   They terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

   1.   Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

   2.   State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (it any);

   3.   And, identify the person(s) who generated it and its current custodians(s).

F.   The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent , independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

G.   The terms "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Florida Rule of Civil

4

Procedure 1.340. Furthermore, " Document" or " documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writing, letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda, mechanical and electronic recordings or transcripts of same, blueprints, flow sheets, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, proposition, articles, announcements, newspaper clippings, books, records, tables, book of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of any document exist, each copy which is in any way not completely identical to a copy which is referenced shall also be produced.

H.   The term "communication" shall mean any transmission of information by any mean transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

I.   The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

J.   The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

K.   All other words have their plain ordinary meaning.

Case 3:14-cv-00127   Document 1-2   Filed 01/17/14   Page 65 of 83 PageID #: 69

# INTERROGATORIES

1. What is your name, address, telephone number, and if you are answering for someone else, your official position.

2. State the name, official title and function, relationship with Defendant, address and telephone number of each person(s) who assisted in the preparation and formulation of the answers to these Interrogatories, and responses to the Request for Production of documents that accompany these interrogatories, and in the assembly of documents to be produced.

3. List the names and addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings in this matter, and specify the subject matter about which the person has knowledge.

4.   State the name, address, telephone number and title of each person(s) who had any role, whatsoever, in working on or adjusting the insurance claim(s) of Plaintiffs, RICHARD DOZIER and GAIL DOZIER, at 563 Glen Echo Drive, Old Hickory, Tennessee 37138, giving a brief description of their responsibilities regarding this matter. This interrogatory seeks the name of every employee of STANDARD, who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims committee. State the name(s), address(es), and telephone all documents that support or explain any of these facts.

   A.   If any person identified in the answer to the preceding Interrogatory has been promoted, demoted, or transferred during the time relevant herein, describe in detail the change in employment status of each such individual, including the circumstances of the person's employment before and after the change in status.

   B.   If any person identified in the answer to the preceding interrogatory is no longer employed with STANDARD, please state the date of separating, and the last-known residence address and telephone number of place of current employment of each such past employee.

5.   Are you aware of any other alleged sinkhole activity that has been investigated by you, anyone else on behalf of Defendant, any person, any entity, or any other insurance carrier within a two-block radius of the Plaintiffs' property during the past three (3) years? If answering affirmatively, please identify: (i) the address(es) of the area investigated; (ii) the party, including the name and address of the engineer, if you are aware, that conducted the investigation; (iii) whether or not the site contained a confirmed sinkhole; and (iv) whether or not the property was repaired, and if so, the method or repair.

7

6. Prior to your denial of Plaintiffs' claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for sinkhole activity on nearby properties? If answering affirmatively, please identify: (i) the specific areas where the claims were filed; (ii) the engineering company retained by you to conduct the investigation for each such claim; and (iii) whether or not you provided coverage for the claim; and (iv) whether or not the property was repaired, and if so, the method of repair. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiffs' home).

7. At or before the Plaintiffs' claim for insurance coverage was denied, do you contend that you ruled out the existence of sinkhole activity within a reasonable degree of scientific certainty? If answering in the negative, please identify; (i) the additional investigation you assert will be necessary to make such a determination; (ii) whether you intend on conducting this additional investigation. If answering in the affirmative, please specifically identify all facts and circumstances which you believe support such a contention and state whether you complied with the minimum standards for investigation of sinkhole claims set forth in section Tennessee Statutes.

8. State the facts and circumstances upon which you rely for each affirmative defense set forth in your Answer and Affirmative Defenses.

9. Do you contend that anything other than a covered peril under the subject homeowners policy is, or may be, the cause, in whole or in part, of damage to the Insureds' premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not previously notified Plaintiffs of your contention.

10. Have you ever heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

9

11. State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

12. For each claim for insurance benefits submitted to you by Plaintiffs during the past four (4) years, please state: (i) the date Plaintiffs first reported the loss to you; (ii) the "date of loss" or date associated with the claim; (iii) whether the claim was denied; (iv) if any payment was tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

13. Describe comprehensively and in detail each and every way you believe that Plaintiffs have violated and/or failed to comply with any terms or conditions of the insurance policy, including but not limited to, cooperate with STANDARDS' investigation and adjustment of the loss, intentional concealment, omitted and/or misrepresented any material facts or circumstances. State then name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

10

14.     Describe comprehensively and in detail the exact nature of all evidence in your possession, which may support any and all allegations of Plaintiffs' Complaint, or that may rebut any and all allegations of Plaintiffs' Complaint with respect to this pending action, and which are discoverable under the applicable Rules of Civil Procedure. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

15.     Describe each file that was opened, created, or maintained by STANDARD relating in any way to the policy or the claim, including the complete name or title of the file, its complete file number or other identifying designation, its present custodian and physical location within STANDARD and its general purpose or business classification. This interrogatory seeks the identification of each "claims file" and each "underwriting file" under whatever designation or description, and every copy of duplicate thereof which may exist within STANDARD. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

16.     State with specificity, when and why did STANDARD anticipate litigation with regard to a breach of contract cause of action in the case at issue. State the name(s), addresses(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

11

17. For the past three (3) years, state the total number of times you, your company, your agents, third party-claims companies retained by Defendant, or your attorney have retained the services of the expert(s) retained in the present case and please state the total amount of compensation paid to the expert(s) during the past three (3) years.

18. If any Requests for Admissions in Plaintiffs' First Request for Admissions served contemporaneously with these interrogatories have been in whole or in part denied, or if anything other than an outright admission was given, please explain the facts supporting said response. Please identify any person with knowledge regarding the reasons for said response and identify any document supporting said response.

19. State bases on which you denied Plaintiffs' claim describe the facts and circumstances supporting said bases.

12

STANDARD FIRE INSURANCE COMPANY


By:_____

STATE OF TENNESSEE

COUNTY OF_____

    The foregoing instrument was acknowledged before me this____ day of _____

_____, 2013, by _____who is personally known to me or who has

produced _____as identification and who did (did not) take an oath, and who

says the he/she executed the foregoing Answers to Interrogatories and that the Answers are true

and correct to the best of his/ her knowledge and belief.


_____

Notary Public (seal)


_____

Printed Name


13

# IN THE CIRCUIT COURT FOR WILSON COUNTY, TENNESSEE

RICHARD DOZIER and )
GAIL DOZIER )
        )
        )
     Plaintiffs, )
        )
v. )
        )
STANDARD FIRE )
INSURANCE COMPANY, )
        )
     Defendant. )

**JURY DEMAND**

2013-cv-685

Case No.

FILED

A.M. DEC 16 2013 P.M.

LINDA NEAL, CIRCUIT COURT CLERK
WILSON COUNTY, TN

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT

COME NOW the Plaintiffs, RICHARD DOZIER and GAIL DOZIER, (hereinafter referred to as "Plaintiffs"), by and through their undersigned counsel, and pursuant to Rule 34.01 of the Tennessee Rules of Civil Procedure, hereby request that Defendant, STANDARD INSURANCE COMPANY, (hereinafter referred to as "Defendant" or "Standard"), produce for inspection, copying or photographing at the office of Thompson Trial Group, P.A., 4725 N. Lois Avenue, Tampa, Florida 33614 within forty-five (45) days from the date of service, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

I.     **DEFINITIONS AND INSTRUCTIONS**

A.     As used herein, "Defendant", "you" or "your" shall mean Defendant, STANDARD, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired,

retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.     As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra-and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets , diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks, drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however, produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced should also be produced.

C.     As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

D.     When producing the requested documents and things, please produce same as they are kept in the usual course or business or label them to correspondence with the categories of this request for production.

2

E.    If you claim a privilege as to any documents or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in manner that without revealing information itself protection claimed.

F.    The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

## II.    DOCUMENTS TO BE PRODUCED

1.    All reports, drafts, charts, drawings, diagrams, or memoranda showing or intending to show the cause of damage to Plaintiffs' real property located at **563 Glen Echo Drive, Old Hickory, Tennessee 37138,** (hereinafter referred to as the "Property") or the potential methods of repair in connection therewith.

2.    A certified copy of the Plaintiffs' all-risk insurance policy that was in effect at the time Plaintiffs' claim was made.

3.    All applications for insurance or corresponding documents that relate to Plaintiffs' procurement of the subject policy.

4.    The entire underwriting file.

5.    All notices of cancellation for any policy issued to Plaintiffs by Defendant.

6.    All notices of non-renewal for any policy issued to Plaintiffs by Defendant.

7.    All field logs, notes, or other memoranda relating to or referencing any engineering or geological consultant's findings or recommendations in connection with the Plaintiffs' Property.

8.    All documents relating to or referencing the damage to Plaintiffs' Property, which were considered by any individual or entity, and any related cost estimates in connection therewith.

9.    All photographs, logs, and/or videos taken of the Plaintiffs' Property with regard to any inspection or testing performed at the request of Defendant or at the request of any of Defendant's representatives.

3

10. All documents relating to or referencing any communication between Plaintiffs and Defendant, including, but not limited to, correspondence or notices in connection with Plaintiffs' claim.

11. All documents signed by Plaintiffs and relating to this action.

12. Any documents, notes, memoranda, diaries, reports, photographs, video, etc., of any person who visited the Property and/or spoke with Plaintiffs on behalf of Defendant, at the request of Defendant, or at the request of any Defendant's representatives.

13. All documents used by you in making the decision to tender or to offer to tender any amount to Plaintiffs in connection with Plaintiffs' claim.

14. All documents used by you in making the decision whether coverage would be provided with respect to Plaintiffs' claim.

15. All documents used by you in making the decision to elect to repair or repair the Plaintiffs' Property in connection with Plaintiffs' claim.

16. All reports, memoranda, or other documents regarding the existence of any alleged sinkhole activity investigated by Defendant or their representatives within a two block radius of the Property.

17. All reports, memoranda, or other documents relating to any ground remediation or repair work, regardless of whether such repairs were ever performed, arising out of alleged sinkhole activity at any neighboring properties within a one-mile radius of the subject Property.

18. All documents, including, but not limited to, prior claims documentation submitted to you by other insureds, which were consulted to assist you in determining whether there have been any other investigations for sinkhole activity at neighboring properties within a two-mile radius of the subject Property.

19. All documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

20. All statements, forms, recordings, tapes, or transcripts of recordings of statements made by Plaintiffs with regard to this claim.

21. All documents which support, refute, or otherwise relate to Defendant's claims or defenses in this action.

22. All documents relating to or referencing any communication by Defendant, to any testing laboratory, consultant, engineer or engineering firm, geologist or geological firm, building contractor, or any expert, including but not limited to, correspondence, memoranda and notes prepared in connection with this claim.

4

23. All documents for any construction/repair estimates or construction/repair proposals regarding the Plaintiffs' Property.

24. All documents including IRS documents, computer printouts, or notes, indicating the total number of times that any of the expert/s retained by you, your company, your third-party claims company, or your attorney in relation to Plaintiffs' sinkhole claim or any expert(s) on Defendant's behalf that has examined, visited, performed any work or any testing of any kind on Plaintiffs' property, have been retained by you, your company, your third-party claims company, or your attorney in the past three years and the total amount of compensation paid to said expert(s) for work in the past three (3) years.

25. All claims file documents regarding Plaintiffs' claim generated prior to your denial of Plaintiff's claim.

26. All documents evidencing the reserve amount set aside for Plaintiffs' claim.

27. All documents identified or referred to in Plaintiffs' First Set of Interrogatories.

28. All documents that relate to the interpretation or application of the subject language at issue in Plaintiffs' claim.

29. All documents relating to your past and present document destruction policies.

30. All documents relating to premiums that Plaintiffs paid you for policies issued.

31. All documents relating to Plaintiffs or Plaintiffs' property, which you obtained from any source other than Plaintiffs.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of the foregoing Request for Production has been served contemporaneously with the Complaint and Responses to same are due within forty-five (45) days from the date of service.

By: _____

*Thompson Trial Group, P.A.*
Thomas W. Thompson, Esquire
thompson@ttglaw.com
TBN: 25817
4725 North Lois Avenue
Tampa, Florida 33614-7046
Telephone: (813) 254-1800
Facsimile: (813) 254-1844
Attorney for Plaintiff

6



7012 3460 0002 8941 3587

7012 3460 0002 8941 3587    12/20/13
STANDARD FIRE INSURANCE COMPANY
2908 POSTON AVENUE, % C S C
NASHVILLE, TN 37203

UNITED STATES POSTAGE
FIRST SERVICES
$ 10.70
JAN 02 2014
02   1M
0004292626
0004292626
MAILED FROM ZIP CODE 37243

Priority Mail
ComBasePrice

## Marc Dedman

**From:** Edwards,Christine R <CREDWARD@travelers.com>
**Sent:** Thursday, January 09, 2014 9:14 PM
**To:** Marc Dedman
**Cc:** Franco,Cheryl A
**Subject:** RE: New Lawsuit – Dozier v. Standard Fire
**Attachments:** Dozier Claim Notes - HPA4826.pdf; Dozier ClaimSummary.pdf; Dozier Complaint.pdf

**AmicusFileIds:** 4148
**AmicusFileName:** The Automobile Insurance Company of Hartford Connecticut/Rodriquez/HAT3025
**AmicusId:** 141879
**AmicusStatus:** Saved

Here are the attachments.

**From:** Edwards,Christine R
**Sent:** Thursday, January 09, 2014 10:14 PM
**To:** Marc Dedman (mod@spicerfirm.com)
**Cc:** Franco,Cheryl A
**Subject:** New Lawsuit – Dozier v. Standard Fire
**Importance:** High

Hi Marc,

Attached please find the Complaint, Claim Notes, and Claim Summary in a new TN Sinkhole lawsuit. Please run a conflict check and let me know whether you are able to represent Travelers in this matter.

Thank You,
Christine R. Edwards, Esq.
Counsel - Claim Legal Property Group
Travelers
One Tower Square, 04MSB, Hartford, CT 06183
Tel: 860.954.1617 Cell: 860.308.0705 Fax: 888.666.0907
E-mail: credward@travelers.com

This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

**Primary Contact:** Pamela Hoff
The Travelers Companies, Inc.
385 Washington Street, MC 515A
Saint Paul, MN 55102

| | |
|---|---|
| Entity: | The Standard Fire Insurance Company |
| | Entity ID Number 2317464 |
| Entity Served: | Standard Fire Insurance Company |
| Title of Action: | Richard Dozier vs. Standard Fire Insurance Company |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Wilson County Circuit Court, Tennessee |
| Case/Reference No: | 2013-CV-685 |
| Jurisdiction Served: | Tennessee |
| Date Served on CSC: | 01/03/2014 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | Dept of Ins-TN on 12/20/2013 |
| How Served: | Certified Mail |
| Sender Information: | Thomas W. Thompson |
| | 813-254-1800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

December 20, 2013

Standard Fire Insurance Company
2908 Poston Avenue, % C S C
Nashville, TN  37203
NAIC # 19070

Certified Mail
Return Receipt Requested
7012 3460 0002 8941 3587
Cashier # 13455

Re:    Richard And Gail Dozier   V.   Standard Fire Insurance Company

Docket # 2013-Cv-685

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served December 20, 2013, on your behalf in connection with
the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Wilson County
    P O Box 518
    Lebanon, Tn 37088